**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Nick Victor BERGERA,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**David Lynn MITCHELL,**
**Defendant-Appellant.**

**Nos. 72–2913 and 72–3049.**

United States Court of Appeals,
Ninth Circuit.

Jan. 21, 1975.

Rehearing and Rehearing En Banc
Denied June 25, 1975.

Frank R. Ubhaus, Asst. Federal Public Defender (argued), San Francisco, Cal., for defendants-appellants.

James Hazard, Asst. U. S. Atty. (argued), San Francisco, Cal., for plaintiff-appellee.

Before CHAMBERS and ELY, Circuit Judges, and MURRAY,* District Judge.

OPINION

WILLIAM D. MURRAY, District Judge:

On November 10, 1971, a Volkswagen bus, imported from Rotterdam, Holland, was unladen at Pier 9, San Francisco, California. The bus was given a routine Customs examination with the aid of a dog trained to detect marijuana. The dog indicated that marijuana was concealed behind the right and left rear quarter panels. The substance was analyzed and found to be marijuana.

The bus was kept under continuous surveillance by Customs officers from November 10 through November 18, 1971.

On November 12, 1971, at approximately 4:20 P.M. the bus was picked up by a Kymry Simonds at Pier 9. Kymry

* Honorable William D. Murray, Senior United States District Judge, District of Montana, sitting by designation.

Simonds drove the bus to the middle of the 200 block of Miller Avenue, Mill Valley, California, where she parked the vehicle. On November 18, 1971, at approximately 3:35 A.M., a Volkswagen bus bearing California license 464 BPW parked behind the Volkswagen bus containing the marijuana. This bus had two occupants, later identified as Nick Bergera and David Lynn Mitchell, registered owner of the Volkswagen bus bearing California license 464 BPW.

At approximately 3:50 A.M. a tow truck arrived and towed the Volkswagen bus containing the marijuana to 34 Rice Street, Daly City, California, where it was placed in the garage.

The officers waited about 25 minutes after the bus had been placed in the garage and then approached the front of the residence. The defendants came out of the house and were arrested on the steps. Two agents entered the residence by force. Inside the residence, the agents found and arrested Cheryl Bergera. Once in the house, the agents found three marijuana plants in a rear bedroom closet, a brown paper bag in a hallway closet containing approximately one kilo of marijuana and two 5″ x 8″ boxes in the kitchen that contained marijuana seeds, stems and residue. The Volkswagen bus containing the marijuana was found in the garage. The agents did not have a search warrant for the residence nor did they have anyone's consent to search the house or garage. They had no arrest warrants.

Mitchell and Nick Bergera were indicted for the knowing possession with intent to distribute marijuana in hashish form. Appellants filed a motion to suppress evidence. Hearings on the motion were held before a United States Magistrate. The magistrate recommended that the motion to suppress be granted as to hashish found in the Volkswagen bus in the garage and as to marijuana found in the bedroom, closets and kitchen of the residence. On February 17, 1972, the government filed a request for review of the magistrate's decision by the district court judge and the case was certified to the district judge. The judge entered an order reversing the magistrate and denying the motion to suppress. Appellants were found guilty as charged on April 21, 1972.

On appeal, Bergera and Mitchell contend that (1) the trial court erred in setting aside the magistrate's findings on the motion to suppress without taking additional evidence, and (2) the district court erred in failing to grant a mistrial when it became apparent that the government could not justify the seizure of small amounts of marijuana about which substantial testimony had been introduced.

Appellants' first contention presents an important issue not previously considered by this court. In a recent decision, we held that a United States Magistrate may hold evidentiary hearings on a motion to suppress; however, the reports of the magistrate represent recommendations only, since the district court must make the final adjudication on the motion. Campbell v. United States District Court for the Northern District of California, 501 F.2d 196 (9th Cir. 1974). *Campbell* did not consider the question now before the court: whether the district court can enter an order inconsistent with the recommendations of the magistrate without itself hearing the evidence on the motion to suppress. We hold that it cannot and reverse the convictions.

Before making his recommendations to the district court on the motion to suppress, the magistrate has listened to each side present arguments, has seen the expressions and demeanor of witnesses, and has directed the course of the hearing. This experience places the magistrate in the best position to rationally determine the facts underlying the motion to suppress. The district court should not lightly disregard recommendations made from first-hand knowledge of relevant evidence. However, since the magistrate may only make recommendations, a question must inevitably arise with regard to what procedures must be adopted by the district court

when it chooses to disregard the recommendations of the magistrate. Two alternatives immediately present themselves: (1) the district court can reject the recommendations of the magistrate and adjudicate the motion on the basis of records provided, or (2) the court can order that the motion to suppress be reheard and the evidence presented directly to it.

The crucial question to be considered when making a choice between these two alternatives is which of the two provides the strongest guarantee for the integrity and accuracy of the fact-finding process.

The ultimate result in many cases like the one presented here is determined by a ruling on a motion to suppress evidence. Since that ruling in turn is often dictated by a factual determination, the method used to ascertain facts must be as accurate as possible. Rules of law affecting the trustworthiness of the fact-finding process should be forged with these considerations well in mind. In Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958), the United States Supreme Court recognized the important role procedures for determining facts can have in the ultimate outcome of litigation:

> "To experienced lawyers it is commonplace that the outcome of a lawsuit—and hence the vindication of legal rights—depends more often on how the factfinder appraises the facts than on a disputed construction of a statute or interpretation of a line of precedents. Thus the procedures by which the facts of the case are determined assume an importance fully as great as the validity of the substantive rule of law to be applied." *Speiser, supra* at 520, 78 S.Ct. at 1339.

Requiring the district court to rehear the evidence if it decides not to follow the recommendations of the magistrate insures that any decision on the facts will be the result of first-hand observation of witnesses and evidence. The law has long recognized the value of these more immediate impressions, and gives them a measure of protection from easy modifications made on the basis of dry records. See 52(a) and 53(e)(2) of the Federal Rules of Civil Procedure and 8(d) of the Magistrate's Rules. A rule of law permitting the district judge to assign evidentiary hearings to a magistrate, and then disregard the recommendation of the magistrate without hearing any testimony or seeing any evidence, would fly in the face of traditional legal respect for findings of fact made on the basis of full participation in the methods recognized as most effective for determining facts. When the vindication of important legal rights necessarily hangs in the balance, the law must require whatever is essential to preserve the integrity of the fact-finding process. The method most widely recognized as effective in that regard is imposition of the requirement that the fact-finder actually observe the evidentiary process so as to properly weigh and appraise testimony. This court has often recognized the value of observing witnesses in order to determine the truth. In United States v. Page, 302 F.2d 81 (9th Cir. 1962) we stated:

> " . . . [I]t is the trial judge who hears the witnesses and who must pass on the credibility. We sometimes tend to forget that the testimony of a witness, presented to us in a cold record, may make an impression upon us directly contrary to that which we would have received had we seen and heard that witness." *Page, supra* at 84.

Similar concerns were before the Supreme Court when it decided Wingo v. Wedding, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974). Although it is clear that *Wingo* is not controlling here,[1] the

---

1. In *Wingo*, the court struck down a local rule permitting full-time magistrates to hear evidence on petitions for writs of habeas corpus. The court found that the local rule was inconsistent with 28 U.S.C. § 2243, which provides for a determination of the facts in a habeas corpus case by "the court, justice, or judge." Since 28 U.S.C. § 636 circumscribed

Supreme Court expressed some general standards applicable to the fact-finding process. After deciding that the district court was required to hold evidentiary hearings on applications for post-trial relief, the Court stated:

"The invalidity of Local Rule 16 is not cured by its provision that the 'District Judge shall proceed to hear the recording of testimony given at the evidentiary hearing and give it de novo consideration.' *Holiday*[2] reasoned that the command of § 761, now § 2243, was designed by Congress in recognition that 'one of the essential elements of the determination of the crucial facts is the weighing and appraising of the testimony.' 313 U.S. at 352 [61 S.Ct. 1015.] . . . In that circumstance, we 'cannot say that any appraisal of the truth of the prisoner's oral testimony' based on listening to a recording of it, 'is, in light of the purpose and object of the proceeding, the equivalent of the judge's own exercise of the function of the trier of the facts.' 313 U.S. at 352 [61 S.Ct. 1015]." *Wingo, supra* at 473, 94 S.Ct. at 2850.

In the case at bar, no statute compels the district court to conduct the evidentiary hearing on the motion to suppress. Hence, as was decided in *Campbell*, the district court can assign the hearing to a magistrate. Since the magistrate sees and hears the evidence, the district court is entitled to rely upon his recommendations when making its decision on the motion. If, however, the district court chooses to reject the recommendation of the magistrate, it must itself hear the testimony and see the evidence before deciding the motion. Permitting the district court to simply review dry records or listen to tape recordings of the evidentiary hearing conducted by the magistrate would not satisfy the high standard which must be set for factual determinations which by themselves can decide the outcome of a criminal trial. The defendant is entitled to the assurance that important factual conclusions will be drawn from the testimony and other evidence itself. That assurance is provided if the district court decides the motion in accordance with the recommendations of a judicial officer who observed the evidence. It is certainly provided if the district court sees and hears the evidence itself. But it is just as certainly absent if the district court is allowed to disregard the recommendation of the magistrate and decide the motion only on the basis of dry records and one dimensional tapes. Therefore we hold that the district court erred when it set aside the magistrate's recommendation and ruled on the motion to suppress without hearing the evidence on the motion itself.

We need not reach appellants' second contention.

Reversed and remanded for proceedings consistent with this opinion.[3]

CHAMBERS, Circuit Judge (dissenting):

I dissent. As I see it, the majority whittles down our Campbell v. United States District Court, 501 F.2d 196 (9 Cir., 1974). I cannot agree with the concept that a district judge can accept without hearing, as in Campbell, a magistrate's ruling (recommendation), but he must hold a hearing de novo before he can reverse. In practice, fair as the judge may be, if he exercises a discretion to hold a hearing, it will usually mean that he has almost made up his mind to reverse the magistrate. That is not good.

For the most part, the evidence before the magistrate was undisputed. As to the small amount of disputed evidence, the magistrate made no findings. As I see it, the district judge really ruled on the motion as a matter of law.

the permissible scope of assignment to magistrates to "such additional duties as are not inconsistent with the Constitution *and laws* of the United States," the local rule was not a valid promulgation pursuant to Section 636.

2. Holiday v. Johnston, 313 U.S. 342, 61 S.Ct. 1015, 85 L.Ed. 1392 (1941).

3. The Court's memorandum of reversal, filed herein on April 18, 1974, is hereby withdrawn.

Here, there was an added protection to defendants. All but one of the witnesses before the magistrate later testified at the trial. If the trial judge later at the trial came to the conclusion that certain witnesses before the magistrate were unreliable, he had continuing jurisdiction over the motion to suppress. Doubtless he would have reversed his earlier ruling if he had seen any reason during the trial to do so.

Maybe Campbell is wrong. Maybe if a party requests a full hearing de novo, the court will have to grant it, thus eliminating much of the value of magistrates. It is inescapable that the Supreme Court will have to fully cover the field of magistrates' authority and the scope of review. But, meanwhile, I cannot go along with the basic idea that if a district judge wants to approve what the magistrate did, he may stamp it "approved," but if he doubts the wisdom of the magistrate in the particular case, then we must have a hearing de novo.