**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Darrell Allen RIDGWAY, Defendant–Appellant.**

No. 01–30337.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 2002.

Filed Aug. 26, 2002.

Sue Ellen Tatter and Mary C. Geddes, Assistant Federal Defenders, Anchorage, AK, for the defendant-appellant.

Stephen Cooper, Assistant United States Attorney, Fairbanks, AK, for the plaintiff-appellee.

Before: B. FLETCHER, ALARCON, and GRABER, Circuit Judges.

ALARCON, Circuit Judge.

Darrell Ridgway appeals from the order of the district court denying his motion to suppress evidence seized by United States Drug Enforcement Agency ("DEA") officers while executing a search warrant at his house. The district court referred the motion to suppress to a magistrate judge. The magistrate judge found the testimony of the Government's key witness to be incredible and recommended that the defendant's motion to suppress be granted. The district court rejected the magistrate judge's credibility determination and denied the motion without conducting a de novo evidentiary hearing. We vacate the order denying Ridgway's motion to suppress and remand for a de novo evidentiary hearing because we conclude that a district court must conduct its own evidentiary hearing before rejecting a magistrate judge's credibility findings made after a hearing on a motion to suppress.

I

On January 25, 2001, DEA Special Agent Cary Freeman executed a search warrant to search Ridgway's house for evidence of marijuana production. The police seized 135 marijuana plants and other evidence of marijuana production before arresting Ridgway. The face of the search warrant that Special Agent Freeman served on Ridgway contained no description of the items to be seized. Instead, it stated "[s]ee Attachment 'A' made a part hereof." Attachment A was the second page of the search warrant that listed the "[i]tems to be searched for." Special Agent Freeman testified at Ridgway's preliminary hearing, conducted before Magistrate Judge Thomas E. Fenton, that he did not bring Attachment A with him into Ridgway's home.

Ridgway filed a motion to suppress the evidence seized at his home, contending that, without Attachment A, the warrant lacked the particularity required by the Fourth Amendment. District Court Judge H. Russel Holland referred the motion to suppress to Magistrate Judge Harry Branson pursuant to the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(B).[1] At the suppression hearing, Special Agent Freeman testified that he brought Attachment A into Ridgway's house and showed it to him. Special Agent Freeman explained that when he testified at the preliminary hearing that he had not brought Attachment A with him into Ridgway's house, he had been referring to the first time he entered the house. Special Agent Freeman testified that he left the house and returned to his car to get Attachment A after the house was secured and subsequently entered Ridgway's house a second time with Attachment A.

In his report and recommendation ("Report"), Magistrate Judge Branson stated

---

1. Title 28 U.S.C. § 636(b)(1)(B) provides in pertinent part:

[A] judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph A [including a motion to suppress evidence in a criminal case]. . . .

that he disbelieved Special Agent Freeman's testimony at the suppression hearing because Special Agent Freeman could not "explain the glaring discrepancies in his testimony" at the preliminary and suppression hearings. He recommended that the district court rule that Special Agent Freeman's failure to serve Attachment A was a Fourth Amendment violation requiring suppression of the evidence seized at Ridgway's house.

The Government filed objections to the Report and asked the district court to conduct its own evidentiary hearing "if it has any uncertainty about rejecting the Magistrate Judge's position." Ridgway did not respond to the Government's request for an evidentiary hearing.

On May 16, 2001, Judge Holland denied the motion to suppress without conducting a de novo evidentiary hearing. The court expressly rejected the magistrate judge's findings regarding Special Agent Freeman's credibility. The court explained that Special Agent Freeman's credibility could be assessed by reviewing the cold record, without personally observing the witness, because "the magistrate judge has founded his credibility determination upon supposed discrepancies, not the witness's demeanor or any other attribute which is unavailable in the paper record." Judge Holland found Special Agent Freeman's testimony credible and reasoned that the "magistrate judge has overlooked [Special Agent Freeman's] testimony on cross-examination[at the suppression hearing,]" which "explain[ed] fully" any alleged discrepancy with his earlier testimony at the preliminary hearing.

Following a bench trial before Judge Holland, Ridgway was found guilty of one count of manufacturing a controlled substance, in violation of 21 U.S.C. § 841(a)(1). The matter was reassigned to Chief Judge James K. Singleton. Chief Judge Singleton sentenced Ridgway to six-

ty months' imprisonment. Ridgway timely filed a notice of appeal. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

## II

■ Ridgway argues that he was denied due process when the "district court reject[ed] the credibility determination of [the] magistrate-judge [and made] its own findings without hearing testimony itself." He points out that due process requires a "hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). He contends that "[t]he nature of the controversy over" the credibility of live testimony required the district court to hear Special Agent Freeman's testimony before rejecting the magistrate judge's findings. We review de novo the question whether a defendant's due process rights were violated. *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir.1993).

We have previously held that a district court may not reject the factual findings of a magistrate judge on a motion to suppress without conducting a de novo evidentiary hearing. *United States v. Bergera*, 512 F.2d 391, 392–94 (9th Cir.1975). In *Bergera*, the magistrate judge recommended that the defendant's motion to suppress be granted. *Id.* at 392. The district court rejected the recommendation of the magistrate judge and denied the motion to suppress without conducting a de novo evidentiary hearing. *Id.* In holding that the district court erred by not conducting a de novo evidentiary hearing before rejecting the magistrate judge's factual determinations, we stressed that our judicial system has traditionally accorded great respect for findings of fact made by the judge who hears and sees the witness. *Id.* at 393. We reasoned:

A rule of law permitting the district judge to assign evidentiary hearings to a magistrate, and then disregard the recommendation of the magistrate without hearing any testimony ..., would fly in the face of traditional legal respect for findings of fact made on the basis of full participation in the methods recognized as most effective for determining facts.

*Id.*

We also emphasized in *Bergera* that "[t]he ultimate result in many cases like the one presented here is determined by a ruling on a motion to suppress evidence. Since that ruling in turn is often dictated by a factual determination, the method used to ascertain facts must be as accurate as possible." *Id.* The rule that we announced in *Bergera*, that a district court is required to conduct a de novo evidentiary hearing before rejecting the factual determinations of the magistrate judge who conducted the suppression hearing, is especially applicable to dispositive motions to suppress and to credibility findings.

Although we held in *Bergera* that a district court is required to conduct a de novo evidentiary hearing before rejecting the factual determinations of a magistrate judge on a motion to suppress, we did not frame this issue in terms of a due process violation. In a case decided after we issued *Bergera*, however, the Supreme Court addressed a related issue and did frame its holding in terms of a defendant's right to due process. *United States v. Raddatz*, 447 U.S. 667, 680, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). In *Raddatz*, the Court held that a district court's *acceptance* of a magistrate judge's credibility determination without conducting a de novo evidentiary hearing does not violate due process. *Id.* The Court noted that the question whether a district court can *reject* the credibility findings of a magistrate judge was not before it. *Id.* at 681 n. 7. The Court observed, however:

[W]e assume it is unlikely that a district judge would *reject* a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal; to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions which we do not reach.

*Id.; accord Louis v. Blackburn*, 630 F.2d 1105, 1109 (5th Cir.1980) (declaring that, "[l]ike the Supreme Court ... we have severe doubts about the constitutionality of the district judge's reassessment of credibility without seeing and hearing the witnesses himself").

The Government argues that "[w]ithout the possibility of [an exception], which *Bergera* neither expressly excludes nor recognizes, a rule that a district court may not reject any kind of magistrate judge's recommendation without a new hearing conflicts with the legislative purpose for [the Federal Magistrates Act, 28 U.S.C. § 636(b)(1),[2]] discussed in *Raddatz*." In *Raddatz*, the Court quoted a portion of the House Report from the House Judiciary Committee that added the present text of the Federal Magistrates Act. 447 U.S. at 675. The House Report stated that "[t]he use of the words 'de novo determination' is not intended to require the judge to actually conduct a new hearing on contested issues." *Id.*

---

**2.** Title 28 U.S.C. § 636(b)(1) provides in pertinent part:

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

The Government's reliance on *Raddatz* is misplaced. *Raddatz* addressed the constitutionality of the *acceptance* of a magistrate judge's factual findings without conducting a de novo evidentiary hearing. The issue presented in *Bergera* and here, by contrast, involves the more troubling question whether a district court can *reject* a magistrate judge's credibility finding without itself seeing and hearing the witness. Indeed, as the Court noted in *Raddatz*, "[n]either the statute nor its legislative history" addresses the case where a district court *rejects* the credibility findings of the magistrate. *Id.* at 681 n. 7.

The Government suggests that a district court should be allowed to reject the credibility findings of a magistrate judge without conducting a de novo evidentiary hearing when (1) the magistrate judge did not explicitly base its credibility findings on the demeanor of the witness; or (2) when the record, on its face, shows the magistrate judge's findings were erroneous. The broad rule announced in *Bergera* contains no exceptions. We asserted in *Bergera*, without qualification, that the "district court can[not] enter an order inconsistent with the recommendations of the magistrate without itself hearing the evidence on the motion to suppress." 512 F.2d at 392.

■ Under the law of this circuit, a district court errs when it does not conduct a de novo evidentiary hearing if it rejects the credibility finding of a magistrate judge who recommends the granting of a motion to suppress. *Id.* at 392–94. That specific holding is not undercut either by *Raddatz* or by the amendments to the Federal Magistrates Act.[3] The district court erred in rejecting the magistrate judge's credibility determination without conducting a de novo evidentiary hearing.

## III

■ The Government argues, in the alternative, that Ridgway forfeited his right to contend on appeal that the district court was required to conduct a de novo evidentiary hearing because he failed to respond to the Government's request that the district court conduct an evidentiary hearing only if it harbored "any uncertainty about rejecting the Magistrate Judge's position." We disagree. Because the magistrate judge recommended that the district court grant Ridgway's motion to suppress on the ground that he did not believe Special Agent Freeman's testimony, Ridgway had no reason to request, or to acquiesce in, a de novo hearing that might result in an adverse ruling. Moreover, under *Bergera*, there is no procedural burden on the defendant to request that the district court take live testimony. Thus, Ridgway did not forfeit his right to appeal on the ground that the district court was required to conduct a de novo evidentiary hearing before rejecting the magistrate judge's credibility findings.

## IV

In *United States v. Gantt*, 194 F.3d 987 (9th Cir.1999), we held that a failure to serve the entire warrant requires suppression only if the violation was "deliberate" or "if the defendant was prejudiced." *Id.* at 1005. The Government contends that a further evidentiary hearing on remand would be "moot" because the district court found that, if Special Agent Freeman did not serve Attachment A, his failure to do so was not deliberate and that Ridgway suffered no prejudice. We do not read the record that way. The district court did not determine whether the alleged lack of service was deliberate or whether Ridgway

---

**3.** We need not decide whether the same rule applies to a reversal based on findings *other* *than* credibility findings.

**1158**

suffered prejudice as a result. Instead, the district court stated:

> If the court were to have concluded, as did the magistrate [judge], that the lead agent was untruthful . . ., the court might reach the same conclusion as did the magistrate judge; for not serving the warrant properly and then lying about it could easily be equated to a deliberate failure to abide by [service requirements].

If the district court, on remand, finds that Attachment A was not served, it will then be required to determine, for the first time, whether the lack of service was deliberate and whether Ridgway was prejudiced.

## CONCLUSION

The district court erred by not conducting a de novo evidentiary hearing before rejecting the credibility determination of the magistrate judge. We therefore VACATE the order denying Ridgway's motion to suppress and REMAND this matter to the district court for further proceedings.