**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Levi Samuel LABUFF, Sr.,**
**Defendant—Appellant.**

**No. 03–30273.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 4, 2004.

Decided June 16, 2004.

<br />

Joseph E. Thaggard, Esq., David G. Dennis, Esq., Office of the U.S. Attorney, Great Falls, MT, for Plaintiff–Appellee.

Edmund F. Sheehy, Jr., Esq., Helena, MT, for Defendant–Appellant.

Before TASHIMA, PAEZ, and BEA, Circuit Judges.

## MEMORANDUM *

Levi Samuel LaBuff appeals his jury conviction and sentence of 108 months for one count of possession with intent to distribute methamphetamine within 1,000 feet of a school, in violation of 21 U.S.C. §§ 841(a)(1) and 860(a), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

We have jurisdiction under 28 U.S.C. § 1291. We affirm the district court's or-

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

der denying LaBuff's motion to suppress. We reverse LaBuff's conviction for possession with intent to distribute methamphetamine and remand for a new trial on this charge for failure to give an instruction on the lesser included offense of simple possession. We also affirm LaBuff's conviction for being a felon in possession of a firearm. Because we are remanding for a new trial, and LaBuff will need to be re-sentenced after the new trial, we do not reach LaBuff's argument that the calculation of his sentence was improper.

## I Facts and Proceedings

Because the parties are familiar with the facts, we do not recite them in detail except as necessary. On July 9, 2001, FBI Special Agent Bradley Michael and a team of law enforcement officers served a search warrant for, *inter alia*, controlled substances, scales, firearms, and money on LaBuff's home, which is located within 1,000 feet of a school in Browning, Montana, on the Blackfeet Indian Reservation.[1] They found Labuff, two of his children, and others in the front yard. LaBuff was arrested on an outstanding warrant, handcuffed and taken inside. Agent Michael gave him a copy of the search warrant and the attachment, which described the property to be searched. When Agent Michael asked LaBuff if he had any firearms, LaBuff said they would find a .22 rifle in the master bedroom closet. Agents did find a .22 caliber, semi-automatic rifle in the closet. The officers also seized $6,291 hidden inside a pinball machine.

At the jail, an officer saw LaBuff kick an object that appeared to have fallen out of his pants and looked like soap wrapped in plastic. The object turned out to be a bag containing 28.1 grams of methamphetamine.

On September 17, 2002, police again arrived to serve a search warrant on LaBuff's residence for controlled substances and firearms. The tactical team entered first and found LaBuff and a woman smoking marijuana. They arrested both. Agent Michael entered to help sweep the residence to look for other people and secure the house before executing the warrant. As he passed LaBuff, Agent Michael told him "We're doing another search warrant. Drugs and guns this time." After securing the house, Agent Michael went to look for LaBuff, but the officers had already taken him to a jail 35 miles away in order to separate him from the woman, who was taken to the tribal jail. After the search, Agent Michael left a copy of the warrant and attachment on LaBuff's pool table and took a copy of them to him at the jail.

During this search, the officers found a backpack containing 3.9 grams of methamphetamine packaged in nine vials, and 29 grams of methamphetamine packaged in nineteen bindles inside a soda can. Also inside the backpack was $15,780 in cash, $485 in money orders, and a digital weighing scale. The police also found other digital weighing scales in the closet and 4.7 grams of methamphetamine in a tool box.

The jury found LaBuff guilty of possession with intent to distribute the methamphetamine seized on September 17, 2002 within 1,000 feet of a school, and of being a felon in possession of a firearm. The jury found LaBuff not guilty of possession with intent to distribute the methamphetamine seized on July 9, 2001. The trial court followed the recommendation in the presentence report and sentenced LaBuff to

---

1. Violations of federal narcotics laws are considered federal crimes of nationwide application. Therefore, federal jurisdiction exists for these crimes, even where the crime occurred on tribal lands. *See United States v. Brisk,* 171 F.3d 514 (7th Cir.1999).

108 months on each count, to run concurrently with each other, but consecutively to a prior conviction that is on appeal in this court in *United States v. LaBuff*, No. 03–30143.

## II  Suppression of the Evidence Seized

█ LaBuff first argues that all evidence seized should be suppressed because he was not served with a copy of the attachment to the search warrant prior to the July 9, 2001 search, and was not served with a copy of the search warrant or its attachment prior to the September 7, 2002 search. The district court denied LaBuff's motion to suppress.

We review de novo a district court's conclusions of law, including the denial of a motion to suppress evidence. *United States v. Fernandez–Castillo*, 324 F.3d 1114, 1117 (9th Cir.2003). We review the district court's factual findings underlying a ruling on a motion to suppress for clear error. *Id.*

Absent exigent circumstances, the police are required to serve a copy of the search warrant and any attachments at the outset of a search. *See* FED. R.CRIM. P. 41; *United States v. Gantt*, 194 F.3d 987, 1004 (9th Cir.1999); *United States v. McGrew*, 122 F.3d 847, 850 (9th Cir.1997). A violation of this rule, however, only requires suppression of evidence seized by the authorities where the violation was deliberate or prejudiced the defendant. *United States v. Ridgway*, 300 F.3d 1153, 1157 (9th Cir. 2002); *Gantt*, 194 F.3d at 1005.

Agent Michael testified that he did serve a copy of both the search warrant and the attachment on LaBuff prior to the search on July 9, 2001. This was sufficient evidence for the trial court to find that LaBuff was in fact served with both on that date.

Agent Michael also testified that he fully intended to serve LaBuff with a copy of the warrant and attachment on September, 17, 2002, but having observed the commission of a crime (smoking marijuana) he needed first to help sweep the residence to determine whether other crimes were being committed or other persons were present, and then to secure it. When he finished securing the residence and was ready to serve the warrant on LaBuff, he discovered that the officers, apprised of the marijuana smoking by LaBuff, had already taken him to jail, 35 miles away.

LaBuff does not contend either that the search warrant was invalid or that the search was not conducted pursuant to the warrant. He was not prejudiced by not receiving a copy of the warrant before the search because, unlike the defendant in *Gantt* who was arrested only after the search had taken place, LaBuff had no right to remain at his house to observe the search, having been lawfully arrested before the search began. *See, Gantt,* 194 F.3d at 996, 1000–01.

The district court also found that the failure to serve LaBuff at the outset of the search was not deliberate and that it was reasonable for Agent Michael to help secure the residence prior to serving a copy of the warrant. We hold that the district court's finding that the failure to serve the search warrant was not deliberate is not clearly erroneous. *See Ridgway,* 300 F.3d at 1157.

## III  Jury Instruction

█ LaBuff also contends the district court erred in refusing to give his requested jury instruction on the lesser-included offense of simple possession of methamphetamine under 21 U.S.C. § 844.

The test for reversal of a district court's decision to give, or not to give, a lesser-included offense instruction to the jury is a

two-part inquiry. Under the first inquiry, we look to see whether the defendant proved that "the offense on which instruction is sought is a lesser-included offense of that charged." *United States v. Pedroni,* 958 F.2d 262, 267–28 (9th Cir.1992). This is a legal conclusion we review de novo. *United States v. Torres,* 937 F.2d 1469, 1476 (9th Cir.1991).

The district court refused to give the proposed instruction because the simple possession statute (21 U.S.C. § 844) requires proof that the defendant possessed the controlled substance without a prescription from a medical provider, whereas the possession with intent to distribute statute (21 U.S.C. § 841(a)(1)) does not. The district court is correct in its reading of the statutes. Nevertheless, we held that simple possession is a lesser-included offense to possession with intent to distribute in *United States v. Gutierrez,* 990 F.2d 472, 477 (9th Cir.1993) ("Gutierrez correctly notes that possession is a lesser included offense of possession with intent to distribute.").[2] *Gutierrez* is binding precedent on us that the district court failed to follow.

Under the second inquiry, where there is a lesser-included offense, we look to see whether the defendant proved that "the jury rationally could conclude that the defendant was guilty of the lesser-included offense but not of the greater." *Pedroni,* 958 F.2d at 267–28. This factual determination is reviewed for abuse of discretion. *United States v. Vaandering,* 50 F.3d 696, 703 (9th Cir.1995). The district court concluded that, given the amount of methamphetamine and other evidence that LaBuff was selling it, the jury could not rationally conclude LaBuff possessed the methamphetamine solely for his own use.

The police found several pieces of evidence that point toward the understandable conclusion that LaBuff intended to distribute the methamphetamine: the $15,780 in cash and $485 in money orders found during one search, and $6,291 in cash found during another search, plenty of packaging materials, and digital weighing scales both with the drugs and in the closet where the firearm was found. Additionally, most of the methamphetamine found at LaBuff's house was separated into small separate packages. LaBuff could and did argue, however, that each piece of evidence was in his possession because he was buying methamphetamine for his own use, not selling it. Although unlikely, it is a conceivable explanation that LaBuff was entitled to put before the jury.

We recognize that "[w]here there is a large quantity of a drug and other evidence tending to establish distribution, courts have declined to require a possession instruction because in those circumstances, once a jury found possession, it could only rationally conclude that the possession was for distribution." *Gutierrez,* 990 F.2d at 477 (affirming denial of lesser-included offense instruction where defendant possessed the equivalent of 6,000 doses of cocaine). Here, however, the amount in dispute was not such a large amount.

We hold that under the facts of this case, especially given the small amount of methamphetamine involved, there was evidence from which the jury could rationally have found LaBuff possessed the methamphetamine solely for his own use. The district court abused its discretion in removing this essential function of the jury.

---

**2.** *Gutierrez* was overruled on other grounds in *United States v. Armstrong,* 48 F.3d 1508 (9th Cir.1995) (en banc), which was itself was re- versed at 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996).

"[A]n error in criminal jury instructions requires reversal unless there is no reasonable possibility that the error materially affected the verdict, or in other words, that the error was harmless beyond a reasonable doubt." *United States v. Rubio-Villareal,* 967 F.2d 294, 297 n. 3 (9th Cir. 1992). Here, we cannot say there is no possibility that the error materially affected the verdict. Accordingly, we remand for a new trial on the charge of possession with intent to distribute methamphetamine within 1,000 feet of a school in violation of 21 U.S.C. §§ 841(a)(1) and 860(a).

## IV   Possession of a Firearm

█ LaBuff also challenges the sufficiency of the evidence to support his conviction for being a felon in possession of a firearm. A challenge to the sufficiency of the evidence is reviewed to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *United States v. McNeil,* 320 F.3d 1034, 1035 (9th Cir.2003). Further, all reasonable inferences are to be drawn in favor of the government, and any conflicts in the evidence are to be resolved in favor of the jury's verdict. *United States v. Alvarez-Valenzuela,* 231 F.3d 1198, 1201–02 (9th Cir.2000).

As long as a convicted felon knowingly has the power and the intention at a given time of exercising dominion and control over a firearm, or over the area in which the weapon is located, directly or through others, he is in possession of the firearm. *United States v. Terry,* 911 F.2d 272, 278 (9th Cir.1990). To support a conviction for knowing possession where there is evidence of joint occupancy, the prosecution must offer "evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon."

*United States v. Heckard,* 238 F.3d 1222, 1228 (10th Cir.2001).

LaBuff relies upon *United States v. Reese,* 775 F.2d 1066 (9th Cir.1985), for the proposition that when a firearm is found in a residence occupied by others, and there is no affirmative evidence to tie a defendant to the room in which the gun was found, or more specifically to the firearm itself, then there is only "pure speculation" that the felon had any dominion or control over the firearm. *Reese,* 775 F.2d at 1074.

It is undisputed that others lived in LaBuff's house, and that the agent could not state with certainty that the master bedroom was the one that LaBuff occupied. It was reasonable for the jury to infer, however, that LaBuff himself occupied the master bedroom since it is his house, and since the officers found a wallet with a receipt made out to LaBuff in the same closet where the rifle was found.

Further, in contrast to *Reese,* here when Agent Michael asked LaBuff whether there were any firearms in his house, LaBuff told the police where to find the firearm and correctly identified the type of firearm. This was sufficient evidence from which the jury could determine that LaBuff had knowledge of and access to the weapon. *See United States v. Sianis,* 275 F.3d 731, 734 (9th Cir.2002) (finding that Sianis's knowledge of the location of the gun in one of his drawers sufficiently implied that he constructively possessed the gun). Therefore, we affirm LaBuff's conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

## V   Conclusion

We affirm LaBuff's conviction for being a felon in possession of a firearm, but reverse his conviction for possession with intent to distribute methamphetamine within 1,000 feet of a school, and remand

for a new trial on that count. Necessarily, LaBuff's sentence is vacated and he shall be resentenced after completion of further necessary proceedings on remand.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED

PAEZ, Circuit Judge, concurring in part, dissenting in part.

PAEZ, Circuit Judge.

I concur in Part III of the majority's memorandum, in which the majority recognizes that the district court abused its discretion in refusing to instruct the jury on the lesser-included offense of possession. I respectfully dissent, however, from Parts II and IV of the majority's memorandum. Because Agent Michael deliberately did not serve LaBuff with a search warrant prior to searching his home, I would reverse the district court's denial of LaBuff's motion to suppress the evidence seized pursuant to the second search warrant.[1] I also would hold that the evidence was not sufficient to convict LaBuff of being a felon in possession of a firearm.

## I.

Service of a warrant is not just a courtesy; it is a requirement under Federal Rule of Criminal Procedure 41(d). *United States v. Gantt,* 194 F.3d 987, 1002 (9th Cir.1999). Indeed, under Rule 41(d), suppression of seized evidence is required if there was a "deliberate disregard of the rule" or if the defendant was prejudiced. *See United States v. Negrete–Gonzales,* 966 F.2d 1277, 1283 (9th Cir.1992). The reason for this rule is well established: "The citizen whose home is invaded with-

out service of a warrant must suffer the invasion while still in doubt of its legality ... Citizens deserve the opportunity to calmly argue that agents are overstepping their authority or even targeting the wrong residence." *Gantt,* 194 F.3d at 1002.

Here, it is undisputed that LaBuff was not served with a copy of the search warrant prior to the search. The majority holds, however, that the evidence seized need not be suppressed because Agent Michael's failure to do so was not deliberate or intentional. I disagree and would reverse the district court's denial of LaBuff's motion to suppress.

Our case law has not explicitly defined what is meant by "deliberate disregard." Rather, in deciding whether there has been "deliberate disregard," we examine the specific facts of each case. Here, the facts establish that Agent Michael deliberately disregarded the requirements of Rule 41(d) and none of the the explanations for his failure to serve the warrant excuse his failure to serve the warrant on LaBuff.

Indeed, there is no evidence that there were exigent circumstances that would have excused service of the warrant and the government never contends otherwise. *See Gantt,* 194 F.3d 1003–04 (concluding that, "absent exigent circumstances, Rule 41(d) requires service of the warrant at the outset of the search"). Although the majority notes that officers needed to sweep the premises to ensure their safety, there is no evidence that LaBuff was violent or dangerous. Even recognizing the impor-

---

1. LaBuff also argues that evidence from the first search—including the gun in the closet—should be suppressed because he was not served with an attachment to the warrant for the search on July 9, 2001. Because Agent Michael's credible testimony was sufficient to establish, by a preponderance of the evidence, that he did serve the attachment, I agree with the majority that the district court properly denied LaBuff's motion to suppress the evidence from the first search.

tance of officer safety, there was no evidence that Agent Michael himself had to conduct the sweep because there was a special team assigned to that task. More significantly, even if Agent Michael had to participate in the security sweep, there was no reason why he could not have served the warrant on LaBuff as LaBuff was being taken outside since the two passed in the door and even stopped long enough to have a brief conversation.

The majority also relies on the district court's finding that Agent Michael verbally advised LaBuff of the nature of the search: that is, he told Labuff they were looking for "guns and drugs." An oral statement that generally describes the nature of the search hardly satisfies the Fourth Amendment's particularity requirement and for purposes of Rule 41(d) cannot be treated as a substitute for a valid warrant. *See United States v. Van Damme,* 48 F.3d 461, 466 (9th Cir.1995) (holding that warrant which doesn't specify items to be seized (or which does not include an attachment specifying those items) does not satisfy the particularity requirement); *Cf. Ramirez v. Butte–Silver Bow County,* 298 F.3d 1022, 1026 (9th Cir.2002) (noting that officer cannot orally amend a defective warrant). Indeed, the reference to "guns and drugs" did not even fairly describe the parameters of the warrant, which also authorized the officers to seize "receipts, documents, photographs, videotapes, or ledgers" pertaining to the possession of drugs or firearms.

In sum, Agent Michael deliberately disregarded the requirements of Rule 41(d). Although he had the opportunity to serve the warrant on LaBuff, he deliberately failed to do so and no exigent circumstances justify that failure. I would therefore hold that the district court erred when it denied LaBuff's motion to suppress the evidence obtained from the search on September 17, 2001.

## II.

I also cannot agree with the majority's determination that there was sufficient evidence for the jury to convict LaBuff for being a felon in possession of a firearm. In so holding, the majority relies on the government's evidence that LaBuff told the officers where they could find a gun; that the gun was found in the master bedroom of LaBuff's residence; and that, more than two months after the gun had been seized, a backpack with a wallet belonging to LaBuff was found in the same closet in which the gun had been found.

To prove constructive possession, "[t]he circumstances of each case must be examined to determine if there is such a nexus or relationship between the defendant and the goods that it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession." *United States v. Terry,* 911 F.2d 272, 278 (9th Cir.1997) (internal quotation and citation omitted). Here, the government's evidence was insufficient to permit the jury to infer that such nexus or relationship existed here.

The evidence does not establish that LaBuff occupied the bedroom in which the gun was found: LaBuff was not the sole occupant of the house and there were other people in the house at the time of the search. Although it is possible that LaBuff occupied the master bedroom, not every house owner occupies the master bedroom. The simple fact that LaBuff owned the house, without more, cannot support a theory of constructive possession. LaBuff's wallet does not prove that he had access to the closet at the time the gun was stored there: The wallet was found in the closet more than two months *after* the gun was found there. *Compare id.,* 911 F.2d at 278 (relying on evidence that defendant knew of the existence of a

firearm, that he had unfettered access to it when his wife was not home, and that the firearm was found in a closet on the same shelf as numerous items of menswear to establish constructive possession of the firearm). Nor does the evidence establish that LaBuff ever used or, even touched the gun: The government did not take fingerprints from the gun and did not present any forensic analysis linking LaBuff to the gun.

The majority concludes that because La-Buff told the police where to find the gun and correctly identified the type of gun, the jury could conclude that he had constructive possession of the gun. In our circuit, however, mere knowledge is not enough to establish constructive possession; rather, the evidence must show that the defendant "had both the power and the intention to exercise dominion and control" over the gun. *Id.* at 278.

The evidence presented at trial was not sufficient to show that LaBuff exercised dominion and control over the firearm found in the closet. Accordingly, I would reverse LaBuff's conviction for being a felon in possession of a firearm.