# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-2924

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DARNELL FIELDS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 CR 906—**Joan B. Gottschall**, *Judge.*

_____

ARGUED JANUARY 23, 2004—DECIDED JUNE 9, 2004

_____

Before BAUER, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Darnell Fields entered a conditional guilty plea to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), reserving the right to appeal the denial of his motions to suppress. He now appeals the denial of his motions to suppress a handgun the police found in his apartment and a statement he made after the handgun was found. Because the district court did not resolve whether the officers' initial entry into Mr. Fields's apartment was lawful, we remand this case for further consideration.

## I. Background

On the night of May 15, 2002, Officer George Gass of the Chicago Police Department stopped a woman for questioning. She informed him that a man named "Darrell," who lived in a nearby building, was holding a gun for a street gang. Officer Gass and his partner then headed toward the mentioned building, determined the defendant matched the description given by the woman, and approached him as he left his apartment building. After Mr. Fields[1] identified himself, Officer Gass told him that the police had received information that he was keeping a gun in his apartment. Mr. Fields allegedly responded that he did have a gun, but that it was for his own protection (the "initial statement"). Other officers then arrived on the scene, some remaining outside with Mr. Fields. Officer Gass and two other officers approached the entrance of Mr. Fields's apartment building and, somehow, entered the building and his apartment. Just how the officers entered Mr. Fields's residence is significantly disputed.

At the suppression hearing before the district court, Officer Gass was the only witness to testify for the government as to the officers' method of entry. He stated that while Officer Bret Rice and another officer waited outside with Mr. Fields, Officer Gass and two others entered Mr. Fields's apartment building through an outside door, which was unlocked and partially open. According to Officer Gass, the officers then walked up a short flight of stairs to the first floor apartment and knocked on the door. Tammy Winston opened the door, identified herself as Mr. Fields's wife, and allowed the officers to enter.

---

[1] To avoid confusion with his cousin, Tiana Shenise Fields, we will refer to Darnell Fields as "Mr. Fields" and to Tiana Shenise Fields as "Shenise Fields," her common name.

Mr. Fields, however, contests this account, contending that Winston never gave the officers consent to enter the apartment. Rather, Lamont Curtis, who deemed Mr. Fields his "best friend," testified that officers took "something" out of Mr. Fields's pocket while they were detaining him outside the building, headed toward his building entrance, and stuck "something" in the door that opened it. Kevin Sharp, who was then engaged to Mr. Fields's aunt, recounted that while handcuffed to Mr. Fields, he watched officers remove keys from Mr. Fields's pocket. Shenise Fields, the defendant's cousin, stated that she was outside Mr. Fields's apartment building when she also observed an officer reach into Mr. Fields's pocket and remove keys. After running to an area outside his bedroom, she saw officers in the bedroom shining flashlights, and witnessed officers order Winston out of bed. Winston also stated that she never gave the officers consent to enter her home.

Rather, Winston testified that after being roused from her bed by the officers, she waited on a couch while the police searched the apartment and recovered a handgun from a dresser drawer in the bedroom. After the officers found the gun, she said they placed a document in front of her and instructed her to sign it next to an "X"; she then signed the document not knowing what it was. According to Officer Gass, however, he explained to Winston that the officers were looking for gang guns, and he told her the search would not begin until she had signed a consent form. In addition, Officer Rice testified that he brought a consent form into the apartment, Winston signed the form, the search began, and the officers found a loaded gun in the bedroom dresser drawer.

Both parties do agree that after the officers found the gun, Officer Gass left the apartment and returned to Mr. Fields. He showed Mr. Fields the gun and informed him the officers had recovered it from inside his apartment. After

Mr. Fields was read his *Miranda* rights, Mr. Fields allegedly stated the gun was "just for protection."

The district court denied Mr. Fields's motions to suppress his initial statement, the gun, and the statement he made after the gun was found. In denying the motion to suppress his initial statement, the district court stated it would "not disguise its skepticism about the sequence of events as testified to by Officer Gass." Mem. Op. at 3. However, noting that Mr. Fields did not testify and that the court had only Officer Gass's undisputed testimony before it, it concluded Mr. Fields was not in custody for purposes of *Miranda* at the time of his initial statement and denied the motion. The district court then ruled that because the initial statement was not illegally obtained, the statement made after the gun was found could not be suppressed as the fruit of the poisonous tree.

The district court next determined that Winston voluntarily signed the consent form before the officers began their search of the apartment. In so finding, the district court stated that "Ms. Winston's testimony on the stand . . . did not engender confidence in the veracity of her story." Mem. Op. at 5. Instead, the court stated, it "[found] more credible the testimony of Officer Rice." *Id.*

The district court did not make any findings as to how the officers initially entered Mr. Fields's apartment. Mr. Fields now appeals the district court's denial of his motions to suppress the handgun and the statement he made after the gun was found, contending we must remand the case for resolution of factual issues that the district court did not decide.[2]

---

[2] Mr. Fields does not appeal the denial of his request to suppress his initial statement, made before the officers' entry into his apartment.

## II. Analysis

In denying Mr. Fields's motions to suppress, the district court found that Winston voluntarily signed the consent form presented to her by the officers inside the apartment. However, it made no findings as to whether the officers' initial entry into the residence was lawful. Although the government asks us to nonetheless infer that the district court determined the entry was legal, we decline to do so.

The fourth amendment generally prohibits the warrantless entry into a person's home. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). The exclusionary rule preventing the use of evidence obtained in violation of this amendment protects its guarantees by " 'deterring lawless conduct by federal officers,' and by 'closing the doors of the federal courts to any use of evidence unconstitutionally obtained.' " *Brown v. Illinois*, 422 U.S. 590, 599 (1975) (quoting *Wong Sun v. United States*, 371 U.S. 471, 486 (1963)).

The fourth amendment's prohibition on warrantless entry into a person's home does not apply, however, when voluntary consent to enter is obtained either from the person whose property is searched, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973), or from someone, such as a spouse, with actual or apparent authority over the premises, *United States v. Matlock*, 415 U.S. 164, 171 (1974); *United States v. Aghedo*, 159 F.3d 308, 310 (7th Cir. 1998). Thus, had Winston, Mr. Fields's wife, voluntarily allowed the officers to enter the apartment, the entry would have been lawful. However, the district court made no such finding.

When reviewing appeals from denials of motions to suppress, we review legal questions de novo and factual findings for clear error. *United States v. Breland*, 356 F.3d 787, 791 (7th Cir. 2004). Whether Winston consented to the officers' entry into the apartment is a question of fact. *See United States v. Pedroza*, 269 F.3d 821, 829 (7th Cir. 2001).

Recognizing that as a reviewing court, we " 'must constantly have in mind that [our] function is not to decide factual issues *de novo*,' " *United States v. Brown*, 79 F.3d 1499, 1510 (7th Cir. 1996) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)), we cannot ourselves decide the lawfulness of the officers' entry.

Importantly, the determination of whether the officers' entry was lawful requires decisions about the weight of evidence and the credibility of witnesses, determinations which Congress has assigned to the district courts. *See id.* at 1509-10 (citing *United States v. DeCorte*, 851 F.2d 948, 952 (7th Cir. 1988)). In arguing that the district court must have rejected Mr. Fields's claim that the officers entered his residence illegally, the government emphasizes that the district court did not find Winston's testimony credible. Yet in the same order, with respect to a request to suppress a statement not at issue here, the district court also explicitly stated that it "[would] not disguise its skepticism about the sequence of events as testified to by Officer Gass." Significantly, only Officer Gass testified that the officers knocked on Mr. Fields's apartment door, Winston answered, and she allowed them inside. Officer Rice, whom the district court found "more credible" than Winston when ruling that she voluntarily signed a consent form after the officers were inside, did not enter the apartment with Officer Gass and offered no testimony as to how Officer Gass and the other officers initially entered. Because the district court made no findings as to the manner of entrance, we cannot determine whether it may have found Officer Gass credible with respect to the officers' entry even after openly expressing its skepticism regarding other aspects of his testimony.

Moreover, the government's focus on the district court's skepticism regarding Winston ignores the testimony of Kevin Sharp, Lamont Curtis, and Shenise Fields. All three testified that they witnessed police officers remove something from the defendant's pockets before heading to his

apartment, and Curtis and Shenise Fields both specifically stated that they saw officers remove keys from Mr. Fields's pockets. Shenise Fields also testified that while outside Mr. Fields's and Winston's open bedroom window, she witnessed officers shine flashlights in Winston's face, repeatedly telling her to "get up." Although this testimony, if believed, would support the defendant's claim that the officers entered Mr. Fields's apartment unlawfully, the district court's order makes no reference to it. We are unable to determine whether the district court believed this testimony or what weight it was afforded.

The absence of a finding as to the manner or lawfulness of the officers' entry is critical here. Both the officers' procurement of the gun and Mr. Fields's statement after being shown the gun occurred after the officers' entry into the apartment. Under the well-established fruit of the poisonous tree doctrine, if the entry into Mr. Fields's residence was illegal, it must then be determined "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun*, 371 U.S. at 488 (citation omitted); *Brown*, 422 U.S. at 599 (citations omitted). Evidence may be "sufficiently distinguishable to be purged of the primary taint" when " 'the causal connection between [the] illegal conduct and the procurement of [the] evidence is "so attenuated as to dissipate the taint" of the illegal action.' " *United States v. Green*, 111 F.3d 515, 521 (7th Cir. 1997) (quoting *United States v. Liss*, 103 F.3d 617, 620 (7th Cir. 1990)).

Therefore, if the entry violated the fourth amendment, as Mr. Fields suggests, denying his motion to suppress the gun may not have been proper if the procurement of the gun was "not sufficiently distinguishable as to be purged of the primary taint." *See United States v. Robeles-Ortega*, 348 F.3d 679, 684-85 (7th Cir. 2003). When the government

submits that a search following an illegal entry is justified by consent given after that entry, a court must first determine whether the consent was given voluntarily. *Id.* at 681; *United States v. Valencia*, 913 F.2d 378, 381 (7th Cir. 1990). Here, the district court found that Winston voluntarily signed a consent form after the officers entered the residence, but before they began their search. The district court also found credible Officer Rice's testimony that he observed another officer filling out the consent form with Winston and explaining that it was the form he had previously described to her.

However, this finding does not end the inquiry, as a court must next determine whether the illegal entry "tainted" the subsequent consent. *Robeles-Ortega*, 348 F.3d at 681; *Valencia*, 913 F.2d at 382. Determining whether the causal chain has been sufficiently attenuated to "dissipate the taint" of the illegal act requires analysis of the temporal proximity of the illegal conduct to the evidence obtained, the presence of any intervening circumstances, and the purpose and flagrancy of the police misconduct. *Brown*, 422 U.S. at 603-04. Similar considerations guide a determination of the admissibility of Mr. Fields's subsequent statement that the gun was "just for protection." The district court reasoned that because it denied the motion to suppress his initial statement (before the officers entered his residence), Mr. Fields's statement after Officer Gass showed him the gun could not be the improper product of an illegally obtained initial statement. Therefore, the district court denied the request to suppress his later statement.

Here, however, Mr. Fields argues that his statement after being shown the gun found inside his bedroom should be suppressed under the fourth amendment.[3] This determi

---

[3] We note it is not clear that Mr. Fields argued to the district court that the fourth amendment required suppression of his
(continued...)

nation requires an analysis of whether the statement should have been excluded as the product of an illegal entry, not an inquiry into the relationship between his statement to Officer Gass outside the apartment and his statement after the police had seized the gun. *See United States v. Jones*, 214 F.3d 836, 838 (7th Cir. 2000) ("A confession that . . . was influenced by unlawfully seized evidence, must be suppressed unless intervening events demonstrate that the illegality did not cause the confession.") (citing *Oregon v. Elstad*, 470 U.S. 298 (1985); *Brown*, 422 U.S. 590; *Wong Sun*, 371 U.S. 471).

Finally, the government directs our attention to decisions from other circuits stating that when a district court denies a motion to suppress evidence, without making or being requested to make findings of fact, the result will be upheld if "any reasonable view of the evidence" will sustain the

---

[3] (...continued)
statement after the gun was found. He had clearly argued that his initial statement should be suppressed because he was in custody for *Miranda* purposes and that his statement after the gun was found should be suppressed under the fruit of the poisonous tree doctrine. (R. 31) (arguing in support of motion to suppress that there had been "no showing of a sufficient break in events that would undermine the inference that the subsequent admission was caused by the illegally obtained first admission"). He also clearly argued that the alleged illegal entry required suppression of the *gun* under the fourth amendment. Although a finding that Mr. Fields failed to raise an argument with the district court would normally constitute waiver of the opportunity to present the argument on appeal, we need not reach this issue, as the government has itself waived any possible waiver defense by not arguing it on appeal. *See United States v. Angle*, 234 F.3d 326, 335 n.1 (7th Cir. 2000); *United States v. Leichtman*, 948 F.2d 370, 375 (7th Cir. 1991).

denial.[4] The government submits that because Mr. Fields entered his conditional plea without asking for a factual finding with respect to the officers' entry into the apartment, we should affirm the denial of his motion to suppress using the "any reasonable view of the evidence" standard. We do not agree.

Although we have stated that a district court need not make specific factual findings in a suppression hearing, *United States v. Talkington*, 843 F.2d 1041, 1048 (7th Cir. 1988), we also made clear that a district court must make enough findings to enable us to review the record in "a reasoned and meaningful manner." *Id.*; *see also* Fed. R. Crim. P. 12(e) (requiring a district court, when ruling on a motion to suppress, "to state its essential findings on the record"); *Brown*, 79 F.3d at 1499 (acknowledging this court could affirm denial of motion to suppress on any basis in the record but remanding for further factual findings). In *Talkington*, we reviewed a district court's denial of a motion to suppress and specifically recognized decisions utilizing the "any reasonable view of the evidence" standard. 843 F.2d at 1048 (citing *Bethea*, 598 F.2d at 333-34; *Smith*, 543 F.2d at 1145; *United States v. Lee*, 699 F.2d 466, 468 (9th Cir. 1982)). However, we remanded for further factfinding, recognizing that the district court was in a "far better position to address ambiguities . . . as well as questions of credibility and character assessment." *Id.* at 1049. As we discussed, we believe that here, too, the district court is in the best position to resolve the dispute as to the initial

---

[4] *E.g.*, *United States v. Johnson*, 212 F.3d 1313, 1316 (D.C. Cir. 2000); *United States v. Bethea*, 598 F.2d 331, 333-34 (4th Cir. 1979); *United States v. Smith*, 543 F.2d 1141, 1145 (5th Cir. 1976). *But see United States v. Moore*, 936 F.2d 287, 288 (6th Cir. 1991) (remanding where district court failed to make any findings of fact); *United States v. Prieto-Villa*, 910 F.2d 601, 610 (9th Cir. 1990) (same).

method of entry into Mr. Fields's apartment, a dispute that was briefed and argued to the district court. As in *Talkington*, the lack of factual findings here means we are unable to review the record in a meaningful manner.[5]

### III.  Conclusion

We believe that the admissibility of the gun seized in the defendant's residence and the statement he made to police thereafter cannot be decided without an initial determination of the lawfulness of the entry into the residence. Therefore, we remand this case for further consideration. On remand, the district court should determine whether, in its view, the entry into Mr. Fields's apartment violated the fourth amendment. If so, it should then determine whether the seizure of the handgun and the defendant's subsequent statement were sufficiently distinguishable to be purged of the taint of the unlawful entry. Absent a compelling reason otherwise, these determinations should be based on the existing record and limited to the testimony and other evidence already presented. *See United States v. Kithcart*, 218 F.3d 213, 219-21 (3d Cir. 2000); *Brown*, 79 F.3d at 1510.

---

[5]  It is worth noting that this is not a case where the district court failed to make any findings of fact. *Cf. Bethea*, 598 F.2d at 333-34 (using "any reasonable view of the evidence" standard where district court did not make any findings of fact); *Smith*, 543 F.2d at 1145 (same). Nor does it present a situation where the record supports only one conclusion, *cf. United States v. Johnson*, 212 F.3d 1313, 1316 (D.C. Cir. 2000) (finding "any reasonable view of the evidence" supported suppression where testimony was uncontroverted), or where the district court's assessment of credibility is clear, *e.g.*, *United States v. Griffin*, 7 F.3d 1512, 1516 (10th Cir. 1993) (finding "any reasonable view of the evidence" supported suppression where district court stated government's evidence was credible and defendant's was not).

This case is REMANDED for further proceedings consistent with this opinion.


A true Copy:

      Teste:


_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*