**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

v.

TRAVIS WINFIELD JOHNSON,
　　　　　*Defendant-Appellant.*

No. 03-4478

Appeal from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
David A. Faber, Chief District Judge.
(CR-02-42)

Argued: June 4, 2004

Decided: August 16, 2004

Before GREGORY and DUNCAN, Circuit Judges,
and Robert R. BEEZER, Senior Circuit Judge of
the United States Court of Appeals for the Ninth Circuit,
sitting by designation.

---

Affirmed by unpublished opinion. Judge Gregory wrote the opinion, in which Senior Judge Beezer joined. Judge Duncan wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Leah Perry Macia, BAILEY & GLASSER, L.L.P., Charleston, West Virginia, for Appellant. Thomas Oliver Mucklow, Assistant United States Attorney, Martinsburg, West Virginia, for

Appellee. **ON BRIEF:** Brian A. Glasser, BAILEY & GLASSER, L.L.P., Charleston, West Virginia, for Appellant. Thomas E. Johnston, United States Attorney, Martinsburg, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

GREGORY, Circuit Judge:

Defendant-appellant Travis Winfield Johnson appeals an order of the United States District Court for the Northern District of West Virginia denying his pretrial motion to suppress, among other things, a firearm found in the passenger compartment of his automobile. The district court denied Johnson's suppression motion on two grounds. First, the court found that the government, through the testimony of two of the officers that searched Johnson's automobile, established by a preponderance of the evidence that Johnson consented to the search of his automobile. Second, the court found that probable cause existed to search the passenger compartment of Johnson's automobile.

On appeal, Johnson argues that the district court's finding that he consented to the search of his automobile is erroneous because the magistrate judge, who conducted the suppression hearing and was thus able to observe the demeanor of the officers, concluded that he was "not satisfied that . . . [Johnson] gave consent to search [his] vehicle." J.A. 107. Consequently, Johnson asserts that the district court should have deferred to the magistrate judge's conclusion that there was insufficient evidence to establish consent. In addition, Johnson argues that the district court erred by finding that probable cause existed to search the passenger compartment of his automobile.

Because we conclude that the firearm in the passenger compartment of Johnson's automobile was properly seized under the plain

view doctrine, we affirm the district court's denial of Johnson's suppression motion.

## I.

On March 11, 2002, Johnson drove to the home of Fulton Walker, an informant for the Eastern Panhandle Drug and Violent Crimes Task Force (the "EPDV Crimes Task Force"), to deliver approximately 5,404 grams of marijuana as agreed during a number of controlled telephone conversations. Once outside of Walker's home, Deputy Snyder and Detective Witt observed Johnson, via video surveillance, remove a number of marijuana packages from a duffle bag located in the trunk of his automobile and place them into a second duffle bag. Deputy Snyder and Detective Witt then observed Johnson place the original duffle bag, which appeared to continue to contain marijuana, back into the trunk of his automobile and carry the second duffle bag into Walker's home. After Johnson entered Walker's home, State Trooper Bean and two other officers observed him, via video surveillance, remove the marijuana packages from the duffle bag that he carried into Walker's home and place them onto a coffee table. Upon doing so, Johnson was apprehended and escorted out of Walker's home. Johnson's automobile was thereafter searched by the EPDV Crimes Task Force. During this search, the EPDV Crimes Task Force retrieved the duffle bag left by Johnson in the trunk of his automobile and confirmed that it contained marijuana. In addition, the EPDV Crimes Task Force retrieved a loaded .40 caliber glock handgun from the passenger compartment of Johnson's automobile. Based on these discoveries, the EPDV Crimes Task Force confiscated Johnson's automobile and the contraband found therein.[1] The EPDV Crimes Task Force did not, however, place Johnson under arrest. Instead, the EPDV Crimes Task Force sought to get Johnson to cooperate with its investigation by identifying his supplier and arranging a controlled purchase.

On October 1, 2002, Johnson, after having declined to cooperate with the EPDV Crimes Task Force, was charged and indicted in the United States District Court for the Northern District of West Virginia

---

[1]Johnson's automobile was later returned when its value was determined to be insufficient to justify forfeiture.

for (1) conspiring to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(D) and 846, (2) possessing with intent to distribute 5,404 grams of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D), and (3) using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). On November 7, 2002, Johnson filed a pre-trial motion to suppress, among other things, the firearm found in the passenger compartment of his automobile. The district court, pursuant to the Federal Magistrate Act, 28 U.S.C. § 636(b)(1)(B), referred Johnson's suppression motion to a magistrate judge for an evidentiary hearing, which was held on November 22nd.

At the hearing, the government called Deputy Snyder as a witness. Deputy Snyder testified that he saw Johnson remove marijuana packages from a duffle bag located in the trunk of his automobile, place said packages into a second duffle bag and leave the original duffle bag, which from his observations appeared to still contain marijuana, back into the trunk of his automobile. Deputy Snyder also testified that, subsequent to Johnson's apprehension, he looked into the passenger compartment of Johnson's automobile, through the windows, and did not see a firearm in plain view. Specifically, Deputy Snyder testified that he saw "some C.D.s, some paraphernalia, that type— papers, that type of thing, but nothing . . . of value" when he looked into Johnson's automobile. J.A. 58. With regard to Johnson's consent, Deputy Snyder testified that Johnson answered "yes" when State Trooper Bean asked: "[Johnson], may I search your automobile?" *Id.* at 60. Deputy Snyder further testified, however, that Johnson's consent was not recorded on the audiotapes and videotapes because they often turn off their equipment "[o]nce a transaction is completed, and [they] have gathered the evidence that [they] are gathering related to [the] specific count." *Id.* at 61. Moreover, Deputy Snyder testified that Johnson's consent was not recorded in writing even though consent forms were available and they remembered to provide Johnson with a property receipt.

In addition to Deputy Snyder, the government called State Trooper Bean as a witness. State Trooper Bean testified that they had been informed by Walker that Johnson customarily transported the marijuana in the trunk of his automobile. He also testified that Deputy Snyder and Detective Witt observed Johnson remove marijuana pack-

ages from a duffle bag located in the trunk of his automobile and place that same duffle bag, which they believed still contained marijuana, back into the trunk of his automobile. In addition, State Trooper Bean testified that Detective Witt informed him, upon escorting Johnson out of Walker's home, that he saw in plain view a firearm inside the passenger compartment of Johnson's automobile. *Id.* at 83. Moreover, State Trooper Bean testified that Detective Witt, after seeing the firearm in plain view, pointed the weapon out to him. *Id.* As to Johnson's consent, State Trooper Bean testified that Johnson responded that it was "fine" when he asked him "if it was all [sic] right if [they] looked through his vehicle." *Id.* at 74-75. He further testified, however, that Johnson's consent was not recorded on an audiotape or videotape because they had turned off the audio and video equipment "before [he] asked . . . Johnson if [he] could search his car." *Id.* at 79. State Trooper Bean also testified that Johnson's consent was not recorded in writing.

After Deputy Snyder and State Trooper Bean testified, Johnson testified for the limited purpose of stating that he did not consent to the search of his automobile. Specifically, Johnson testified that he answered "no" when asked by "the police officers [if] they could search [his] car." *Id.* at 89. When asked if he told the officers that "they couldn't search [his] car," Johnson testified that the officers "did ask for consent" and that he "told them that they couldn't search [his automobile]." *Id.* At the conclusion of Johnson's suppression hearing, the magistrate judge stated:

> It does bother me . . . that we have video going and audio going and we have briefcases full of blank consent forms, that in these cases why if [d]efendants are consenting, why don't we get something done? Why don't we get something in writing or something on tape? . . . [I]t just makes these cases so much simpler. If the defendants are supposedly cooperating, I'm sure they would sign a form.

*Id.* at 97.

On November 25, 2002, the magistrate judge issued a report setting forth his proposed findings and recommendations. In his report, the magistrate judge recommended to the district court that Johnson's

motion to suppress the firearm found in the passenger compartment of his vehicle be denied on the basis that probable cause existed to search the full interior of Johnson's automobile. The magistrate judge also recommended, however, that Johnson's suppression motion not be denied on the basis that he consented to the search of his automobile. In doing so, the magistrate judge wrote that he was "not satisfied that . . . [Johnson] gave consent to search [his] vehicle." *Id.* at 107.

On November 27th, the government objected to the magistrate judge's recommendation regarding Johnson's consent to the search of his automobile. On December 2nd, Johnson objected to the magistrate judge's recommendation that his suppression motion be denied on the basis that the officers had probable cause to search the full interior of his automobile. Four days later, however, on December 6th, Johnson entered a plea agreement through which he agreed to plead guilty to possessing with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(D), and using, carrying and possessing a firearm during, in relation to and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). In an addendum to his plea agreement, also dated December 6th, Johnson expressly reserved the right to appeal the denial of his suppression motion.

On December 12th, the district court held a change of plea hearing during which Johnson entered his guilty plea. At this hearing, the government had State Trooper Bean testify about the events of March 11th. In doing so, State Trooper Bean testified that the firearm found inside Johnson's automobile was "in the passenger compartment . . . between the seat and the console." *Id.* at 146. When cross-examined by Johnson's counsel as to the actual location of the firearm, State Trooper Bean testified that, although he was uncertain whether the firearm was inside the compartment "between the driver's side and the passenger side," he was sure it was in the area "between a seat and a console . . . where the gear shift is located, on the right side of the driver's seat." *Id.* at 148. On December 19th, the district court, without holding its own suppression hearing, issued an order accepting in part the magistrate judge's proposed findings and recommendations. Specifically, the district court accepted the magistrate judge's recommendation that Johnson's motion to suppress the firearm be denied on the basis that probable cause existed to search Johnson's entire vehi-

cle. The district court, however, rejected the magistrate judge's recommendation finding that the government failed to establish by a preponderance of the evidence that Johnson consented to the search of his automobile. Accordingly, the district court denied Johnson's motion to suppress the firearm on the grounds that he consented to the search and that probable cause existed to search the passenger compartment of his automobile.

On May 14, 2003, Johnson was sentenced to a total term of imprisonment of seventy-five months. Specifically, Johnson was sentenced to fifteen months of imprisonment for possessing with intent to distribute marijuana and sixty months of imprisonment for using, carrying and possessing a firearm during, in relation to and in furtherance of a drug trafficking crime. This appeal followed.

## II.

"When considering on appeal a motion to suppress evidence, we review a district court's factual findings for clear error and its legal determinations de novo." *United States v. Perkins*, 363 F.3d 317, 320 (4th Cir. 2004). Given that the district court denied Johnson's suppression motion, we construe the evidence in the light most favorable to the government. *Id.*

## A.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches, the Supreme Court has held, are *per se* unreasonable unless they fall under a specific exception to the Fourth Amendment's warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is the "plain view doctrine." *Horton v. California*, 496 U.S. 128, 137 (1990)("The 'plain view' doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable."). Under this doctrine, officers may seize an object without a warrant if (1) the object is actually in plain view; (2) the officers are lawfully located in a place from which the object can be plainly seen; (3) the object's incriminating character is immedi-

ately apparent; and (4) the officers have a lawful right of access to the object. *Id.* at 136-37. We discuss each of these prongs in turn.

1.

At Johnson's suppression hearing, Deputy Snyder testified that he did not see a firearm in plain view when he looked into Johnson's automobile. State Trooper Bean, on the other hand, testified that Detective Witt looked inside of Johnson's automobile and saw in the passenger compartment a firearm in plain view. In addition, State Trooper Bean testified that Detective Witt pointed the weapon out to him, which was located "between a seat and a console . . . where the gear shift is located, on the right side of the driver's seat." J.A. 148. Because we construe the evidence in the light most favorable to the government when a district court denies a motion to suppress evidence, *Perkins*, 363 F.3d at 320, we conclude, as explained below, that State Trooper Bean's testimony is sufficient to establish that the firearm found in the passenger compartment of Johnson's automobile was in plain view.

After reviewing the record, we find nothing to suggest that the magistrate judge or district court questioned the credibility of State Trooper Bean.[2] In addition, Johnson himself did not assert that the firearm was not in plain view when he testified at the suppression hearing or challenged State Trooper Bean's testimony as to the actual location of the firearm. Moreover, Deputy Snyder never called into question State Trooper Bean's testimony. Rather, he simply testified as to what he saw when he looked into Johnson's automobile. Lastly, the testimony of Deputy Snyder and State Trooper Bean, while not corroborating each other, are not in conflict. Deputy Snyder testified

---

[2]The fact that State Trooper Bean's testimony did not convince the magistrate judge that Johnson consented to the search of his automobile does not mean that the magistrate judge doubted his credibility. Rather, it simply means that the magistrate judge concluded that State Trooper Bean's testimony, when considered in light of the fact that Johnson denied consenting to the search and Johnson's alleged consent could have been recorded in writing and on an audiotape or videotape, was insufficient to establish *by a preponderance of the evidence* that Johnson consented to the search.

that upon looking into Johnson's automobile he only saw "some C.D.s, some paraphernalia, that type—papers, that type of thing." J.A. 58. Thus, it is entirely possible that these things had the effect of preventing Deputy Snyder from seeing the firearm in plain view whereas they did not have the same effect on State Trooper Bean and Detective Witt.

2.

There is no question that State Trooper Bean and Detective Witt were in a lawful position when they saw the firearm in the passenger compartment of Johnson's automobile. First, State Trooper Bean and Detective Witt saw the firearm while standing outside of Johnson's automobile and peering in through the windows. Second, State Trooper Bean and Detective Witt were lawfully present on Walker's property.

3.

In order for the incriminating character of an object to be immediately apparent, police must have probable cause to believe that the object in question is contraband or evidence of a crime. *Arizona v. Hicks*, 480 U.S. 321, 326 (1987)("We now hold that probable cause is required [to invoke the plain view doctrine]."). To have probable cause, police need not "know" or have an "unduly high degree of certainty" that the object in question is contraband or evidence of a crime. *Texas v. Brown*, 460 U.S. 730, 741 (1983)(plurality opinion). Rather, they need only believe, under the circumstances and based on their experience, that there is a probability that the object is contraband or evidence of a crime. *Id.* at 742. Here, State Trooper Bean and Detective Witt had probable cause to believe that the firearm in the passenger compartment of Johnson's automobile was contraband or evidence of a crime. First, State Trooper Bean and Detective Witt were aware that Johnson, during several controlled telephone conversations, had agreed to deliver approximately 5,404 grams of marijuana to Walker's home. Second, they observed Johnson drive, by himself, to Walker's home on the agreed upon date, remove several marijuana packages from a duffle bag located in the trunk of his automobile and place that same duffle bag, which appeared to continue to contain marijuana, back into the trunk of his automobile. Third, they

apprehended Johnson in possession of a second duffle bag, which he carried into Walker's home, containing marijuana.

4.

The requirement that officers have a lawful right of access to an object is the "corollary of the familiar principle . . . that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" *Horton*, 496 U.S. at 137 n.7. Given that the firearm was inside of Johnson's automobile, which was operational, exigent circumstances existed because automobiles by their very nature are mobile and thus create a risk that the object in question will be moved, hidden or discarded before police can obtain a search warrant. This risk continues to exist even when, as is the case here, the defendant has been apprehended because someone else could possibly move the car and in the process hide or discard the object in question. *United States v. Brookins*, 345 F.3d 231, 237 n.7 (4th Cir. 2003)("[W]e view ready mobility as defining the nature of the *use* of the vehicle, rather than its ability to be moved by a defendant upon stop or seizure.")

B.

Accordingly, we find that all four prongs of the plain view doctrine have been satisfied and thus conclude that the firearm in the passenger compartment of Johnson's automobile was properly seized. We therefore affirm the district court's denial of Johnson's suppression motion.

*AFFIRMED*

DUNCAN, Circuit Judge, dissenting:

I thank Judge Gregory for his fine opinion, but cannot agree that the district court's order may be affirmed. I believe it would be more appropriate to remand than to resolve ambiguities and infer factual underpinnings from a record that is, at best, equivocal. Therefore, I respectfully dissent.

This appeal arises following the denial of Johnson's motion to suppress a firearm seized from his car after a warrantless search of his vehicle at the conclusion of a sting operation. It is undisputed that at the suppression hearing, two officers testified that Johnson consented to a search of his car (although they failed to memorialize the fact), and that Johnson denied giving consent. Additionally, although both officers claimed to have inspected the car's interior by looking through its windows, only one (Trooper Bean), indicated seeing a firearm in plain view. The magistrate judge recommended denying Johnson's motion, stating that while "the Court is not satisfied that the defendant gave consent to search the vehicle," J.A. 107, the search was justifiable under the "automobile exception"; the magistrate judge made no mention of Trooper Bean's contention that the firearm was in plain view. The district court adopted the magistrate judge's recommendation for different reasons, stating that "[a] review of the hearing indicates that the government proved the defendant's consent by a preponderance of the evidence," and that "there was probable cause to search the vehicle based upon what law enforcement saw while making the exterior and interior videos of the drug transaction given the exigent circumstances presented." J.A. 160.

As part of its conclusion that the denial of Johnson's motion to suppress may be affirmed under the district court's seemingly independent "plain view" theory, the majority reconciles the differing assessments of the suppression hearing by stating that "we find nothing to suggest that the magistrate judge or district court questioned the credibility of State Trooper Bean." *Ante* at 8. Without addressing the extent to which an adverse credibility determination regarding Trooper Bean would undermine its "plain view" analysis, the majority asserts that

> [t]he fact that State Trooper Bean's testimony did not convince the magistrate judge that Johnson consented to the search of his automobile does not mean that the magistrate judge doubted his credibility. *Rather, it simply means that the magistrate judge concluded that [his] testimony, when considered in light of the fact that Johnson denied consenting to the search . . . was insufficient to establish* by a preponderance of the evidence *that Johnson consented to the search.*

*Ante* at 8 n.2 (emphasis added). This assertion is questionable, for two reasons.

The first is that the magistrate judge said nothing of the kind. In fact, the government believed that the magistrate judge made a credibility determination, and objected to it. R. 33 at 2. To avoid this issue, the majority must resolve a latent ambiguity in the opinions that, as explored below, is itself an arguable basis for remand.

Under Federal Rule of Criminal Procedure 12(d), a district court in resolving a pre-trial motion "must state its *essential* findings on the record" (emphasis added). Effectively, this mandate requires a district court to "make enough findings to enable us to review the record in a reasoned and meaningful manner." *United States v. Fields*, 371 F.3d 910, 916 (7th Cir. 2004) (internal quotations omitted). However, a district court's failure "to state the factual findings underlying its decision on a motion to suppress does not necessitate a remand" where "any reasonable view of the evidence supports [the district court's decision]." *United States v. Bloomfield*, 40 F.3d 910, 913 (8th Cir. 1994) (en banc) (internal quotations omitted, alteration in original) (collecting cases); *accord United States v. Bethea*, 598 F.2d 331, 333-34 (4th Cir. 1979) ("When . . . a district court denies a motion to suppress evidence, without making or being requested to make findings of fact, the result will be upheld on appeal if *any reasonable view of the evidence*, looked at in the light most favorable to the government, will sustain the denial." (emphasis added)).

Although the majority's approach appears to be in keeping with an application of the "any reasonable view of the evidence" standard, several circuits have limited the circumstances in which it is appropriate for the reviewing court to reconstruct the lower court's reasoning (or lack thereof). For example, in remanding a denial of suppression despite the "any reasonable view of the evidence" standard, the Seventh Circuit noted that

> this is not a case where the district court failed to make *any* findings of fact. *Cf. Bethea*, 598 F.2d at 333- 34 (using "any reasonable view of the evidence" standard where district court did not make any findings of fact); [*United States v. Smith*, 543 F.2d 1141, 1145 (5th Cir. 1976)] (same). Nor

does it present a situation where the record supports only one conclusion, *cf. United States v. Johnson*, 212 F.3d 1313, 1316 (D.C. Cir. 2000) (finding "any reasonable view of the evidence" supported suppression where testimony was uncontroverted), or where the district court's assessment of credibility is clear, *e.g.*, *United States v. Griffin*, 7 F.3d 1512, 1516 (10th Cir. 1993) (finding "any reasonable view of the evidence" supported suppression where district court stated government's evidence was credible and defendant's was not).

*Fields*, 371 F.3d at 917 n.5 (emphasis added).[1] Here, it is undisputed that of the two officers that contradicted Johnson's consent testimony, only one reported seeing a firearm during his inspection. The majority attempts to account for this discrepancy in the officers' testimony by suggesting that it is "entirely possible" that the second officer's view of the firearm was blocked by Johnson's personal effects. *Ante* at 9. However, this assumption finds at best equivocal support in the record and is not addressed in either of the opinions below. Because the majority's opinion resolves against Johnson underlying factual issues, such as whether the officers inspected the interior of his vehicle from the same vantage points, I cannot endorse its "plain view" analysis.

Second, the majority's analysis implicates a separate consideration that it is structured to avoid: whether the district court supplanted a credibility determination by the magistrate judge without the benefit of having heard all the relevant testimony firsthand. The majority's effort to reconstruct the district court's unspoken or ambiguous reasoning under an apparent "any reasonable view of the evidence" standard of review would be appropriate had the district court stated that "the Government's evidence was credible and [the] defendant's was not." *Griffin*, 7 F.3d at 1516. However, the district court made no such finding, offering only the mixed conclusion of fact and law that its

---

[1]*See also United States v. Dale*, 991 F.2d 819, 840 (D.C. Cir. 1993) (reviewing the district court's findings after having remanded "because we did not know which of three separate legal theories advanced by the government the district court had adopted *and what facts, if any, it relied on to support its chosen theory*" (emphasis added)).

"review of the hearing indicates that the government proved the defendant's consent by a preponderance of the evidence." J.A. 160.[2] If the majority deems it improper to infer a credibility determination in a similar statement by the magistrate judge, it appears incongruous for it to do so when presented with a similarly conclusory statement by the district court. As a result, an essential predicate for the majority's apparent review of the district court's suppression order under the "any reasonable view of the evidence" standard is missing.

The reason for its absence is clear. If we are to infer that the conclusions of the magistrate judge and district court rest on credibility determinations, it would be erroneous for the district court to supplant the magistrate judge's assessment with his own without holding a second evidentiary hearing. I recognize that, as a general matter, a district court need not hold an evidentiary hearing in order to conduct a de novo review of any issue in a magistrate judge's report to which a party objects. *See, e.g.*, *Peretz v. United States*, 501 U.S. 923, 938-39 (1991). However, while holding that motions to suppress could be referred to magistrate judges (provided that district courts conduct a de novo review if requested by either party) in *United States v. Raddatz*, 447 U.S. 667 (1980), the Court noted that

> we assume it is unlikely that a district judge would *reject* a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal; to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions which we do not reach.

447 U.S. at 681 n.7. Courts have disagreed over whether a second hearing is required when a district court reaches a conclusion that contradicts a magistrate judge's credibility determination. *See United States v. Marshall*, 609 F.2d 152, 155 (5th Cir. 1980) (recognizing the possibility of a "rare case" in which there is in the transcript of the suppression hearing "an articulable basis for rejecting the magistrate's original resolution of credibility and that basis *[is] articulated by the*

---

[2]*See also United States v. Carter*, 300 F.3d 415, 423 (4th Cir. 2002) (noting that whether valid consent to a search has been established is a mixed question of fact and law).

*district judge*" (emphasis added)).[3] Nevertheless, the courts of appeals directly confronted with a district court's decision to supplant its own credibility determination for the magistrate judge's without first rehearing the disputed testimony have uniformly indicated that such a decision constitutes reversible error. *See United States v. Ridgway*, 300 F.3d 1153, 1157 (9th Cir. 2002); *United States v. Cofield*, 272 F.3d 1303, 1305-06 (11th Cir. 2001); *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999); *Hill v. Beyer*, 62 F.3d 474, 482 (3d Cir. 1995); *Louis v. Blackburn*, 630 F.2d 1105, 1109-10 (5th Cir. 1980). Thus, the district court could not have properly made a credibility determination that would allow this court to conduct an "any reasonable view of the evidence" review without giving rise to an independent error.

As indicated above, the majority opinion attempts to avoid this issue by concluding that the magistrate judge did not make a credibility determination to supplant. However, the government disagrees, and so do I. Although it is possible to interpret the magistrate judge's statement that he was "not satisfied that the defendant gave consent to search the vehicle," J.A. 107, in the way the majority does, when considered in context, it seems clear that the magistrate judge made a credibility determination, as he found the defendant's testimony outweighed the uncorroborated but consistent testimony of two officers. The government understood the magistrate judge's conclusion to subsume an assessment of the officers' credibility,[4] and I agree.

Ultimately, while the majority's carefully crafted opinion appears

---

[3]*See also Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.* 973 F.2d 1033, 1045 (2d Cir. 1992) (rejecting contention that "before a district court may reject credibility findings of a magistrate judge it must recall witnesses and hear and observe them itself" in part because "the rejection of the magistrate judge's conclusion by the district court was not based on witness credibility").

[4]*See* Appellee's Br. at 11-13; R. 33 at 2 (limited objection to magistrate judge's recommendation) ("The United States believes that the credibty of the two officers is unquestioned. . . . Thus, the United States submits that the testimony of [ ] Trooper Bean and Cpl. Snyder should have been more than satisfactory to the Magistrate Judge and the United States objects to any suggestion to the contrary.").

to successfully skirt the district court's apparent error in supplanting the magistrate judge's credibility determination with its own, in so doing the opinion crystalizes the difficulty flowing from the ambiguous language used by the magistrate judge and the district court's blanket assertion of legal conclusions without making any underlying factual findings. In such cases, a remand for further factfinding seems appropriate, as the district court is in a "far better position to address ambiguities . . . as well as questions of credibility and character assessment" than a court of appeals. *United States v. Talkington*, 843 F.2d 1041, 1049 (7th Cir. 1988).