UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued November 15, 2006
Decided December 12, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-4187

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee,* <br><br> v. <br><br> ANIVAL PUNZO, <br> *Defendant-Appellant.* | Appeal from the United States District Court for the Northern District District of Illinois, Eastern Division <br><br> No. 03 CR 1075 <br><br> Matthew F. Kennelly, *Judge.* |

**O R D E R**

After the district court denied Anival Punzo's motion to suppress drugs and firearms obtained during a search of his residence and inculpatory statements he made to police, Punzo entered a conditional guilty plea to conspiring to possess more than five kilograms of cocaine in violation of 18 U.S.C. §§ 846, 841(a)(1). Punzo appeals the district court's denial of the motion to suppress. We affirm.

**I**

In April 2002, Immigration and Customs Enforcement agents arranged, along with a confidential source (CS), to set up a controlled purchase of approximately 100 kilograms of cocaine. Consistently with the plan, the CS rented a car and left it in a designated location. Police officers tailed the car to Punzo's garage. After the car left the

garage, the police pulled it over and found 97 kilograms of cocaine. The driver, Saul Cerna, was arrested; the government reports that he is now a fugitive.

Officers then staked out the Punzo residence for several hours, but they did not seek a search warrant. During this surveillance, Agent J. R. Estes entered Punzo's garage and spotted open boxes containing what he believed to be drugs. He passed this information along to Agent Lindsey Murphy, the agent supervising the investigation. Shortly thereafter, Agent Murphy asked three officers, including Officer Gerald Lau, to "knock and talk" at the Punzo residence to ask for consent to search the house and garage. Manuel Punzo, the defendant's father (to whom we refer as Manuel, to avoid confusion), answered the knock at the door. Officer Lau's and Manuel's accounts of what happened next are very different.

Officer Lau's testimony, which the district court credited over Manuel's, was as follows. Officer Lau had his gun drawn and was holding it alongside his leg when he knocked on the front door. The officers identified themselves, and Manuel gave them permission to enter. Officer Lau asked Manuel if he had any weapons, and patted Manuel down. Manuel gave Officer Lau his license, which showed that Manuel lived at a different location. Manuel explained that the house belonged to his son, who was at work. During this conversation, Office Charles Honore entered the home through a back door that the police had opened. Officer Honore checked two basement rooms to determine whether any other people were present, and then headed upstairs to the living room, where Officer Lau and Manuel were talking.

Officer Lau asked Manuel if the officers could search the house and the garage, and Manuel gave verbal consent. Officer Lau then handed Manuel a bilingual, preprinted consent form that advised him of his right to withhold consent, but none of the blanks in the form were filled in, including the blank that called for a description of the area to be searched. Officers Lau and Honore agreed that Manuel appeared to read the consent form before signing it on the Spanish side.

Manuel, on the other hand, says that when he opened the door, five or six plain-clothed and unidentified men rushed into the living room, pointed their guns at him, and shouted "Where are the people?" They pushed Manuel down onto a couch. Then at least five officers searched the house for other people while two other officers put Manuel up against a wall, searched him, checked his license, and questioned him with guns drawn. The officers handed him a form which Manuel was unable to read and which contained several blanks. The officers told him, "Sign this paper here," which Manuel interpreted as a demand, and he complied. After Manuel signed the consent form, officers found a machine gun and a handgun inside the house. In the garage, they found 191 kilograms of cocaine.

Anival Punzo arrived at the house sometime later. After hearing the *Miranda* warnings and waiving his rights, Punzo confessed that he had agreed to let a man

named "Raul" store cocaine in his garage in exchange for $10,000. In a later confession, Punzo repeated this and identified Saul Cerna, the driver whom police had arrested on the morning of April 26th, as "Raul."

Punzo moved to suppress the physical evidence seized from his garage and his house and his inculpatory statements. After a three-day suppression hearing, the district court denied the motion to suppress. Punzo appeals, arguing that the district court erred (1) by crediting Officer Lau's testimony over Manuel's, (2) by finding that Manuel's consent was voluntary, and (3) by finding that Manuel's consent was not tainted by Agent Estes's illegal search of the garage and by Officer Honore's illegal sweep of the basement.

## II

When reviewing a district court's denial of a motion to suppress, we apply the *de novo* standard to legal conclusions and the clear error standard to findings of fact. *United States v. Robeles-Ortega*, 348 F.3d 679, 681 (7th Cir. 2003). Clear error does not exist  when the district court chooses between two permissible views of the evidence. *United States v. Marty*, 450 F.3d 687, 690 (7th Cir. 2006).

The question at the heart of this appeal—whether Manuel's consent was valid—depends largely on whether Manuel's or Officer Lau's version of events is credited. We therefore first address the question whether the district court erred when it believed Officer Lau. Credibility determinations "can virtually never be clear error," *United States v. Blalock*, 321 F.3d 686, 690 (7th Cir. 2003) (internal quotation marks omitted), and will not be disturbed unless they are "completely without foundation." *United States v. Ferguson*, 35 F.3d 327, 333 (7th Cir. 1994); *see also United States v. Ortiz*, 431 F.3d 1035, 1039 (7th Cir. 2005). Punzo does not come close to making that demanding showing. He merely points out that some of Officer Lau's testimony was contradicted. That much is true, but the contradictions were on immaterial points, such as whether Officer Lau entered the Punzo home at 1:00 pm or 1:30 pm, and whether Officer Lau counter-signed the consent form as a witness while he was at the house or later at the police station. These do not concern the circumstances surrounding Manuel's consent. The district court was in the best position to judge Officer Lau's credibility, *see United States v. Berthiaume*, 233 F.3d 1000, 1003 (7th Cir. 2000), and it was entitled to believe him in spite of these minor discrepancies.

The next question is whether Manuel's consent was voluntary. The totality of the circumstances supports the district court's conclusion that it was. The officers did not forcibly enter the house, Manuel was not under arrest when he consented, and the officers did not threaten to secure a warrant if Manuel refused to cooperate. *See United States v. Villegas*, 388 F.3d 317, 325-26 (7th Cir. 2004) (concluding that consent was voluntary under similar circumstances). In addition, Manuel rapidly assented within minutes of the officers' entry, both verbally and in writing.

Officer Lau was not required to obtain written consent after Manuel verbally consented to the search, *see United States v. Price*, 54 F.3d 342, 346-47 (7th Cir. 1995), but the fact that Manuel consented in writing buttresses the conclusion that his consent was voluntary. *See United States v. Navarro*, 90 F.3d 1245, 1257 (7th Cir. 1996). The form advised Manuel that he could refuse to consent and that, by signing, he agreed that his consent was given "knowingly, voluntarily, and without having received any threats, promises, or duress of any kind." *See id.*; *United States v. Saadeh*, 61 F.3d 510, 518 (7th Cir. 1995).

Punzo offers two reasons for finding that the district court erred in finding Manuel's consent voluntary. First, he contends that Manuel was "susceptible to coercion" because his "primary language" is Spanish. But Manuel testified in English during the suppression hearing without any evident problems. Moreover, the consent form he signed was in Spanish. Second, Punzo argues that Manuel's consent was involuntary because the police did not fill in the blank describing the scope of area to be searched before Manuel signed it. In determining the scope of a consent search, the relevant question is "what would a reasonable person have understood by the exchange between the officer and the person who provided consent?" *See United States v. Raney*, 342 F.3d 551, 556 (7th Cir. 2003). Officer Lau testified—and the district court believed—that Manuel verbally consented to a search of both the house and the garage just minutes before he signed the consent form. It would have been objectively unreasonable for Manuel to believe that by signing a form that left blank the scope of the search, he somehow limited the scope of his verbal consent. Thus under the totality of the circumstances, Manuel's consent to search was voluntary.

Finally, Punzo contends that even if Manuel's consent was otherwise voluntary, it was tainted because it was preceded by two illegal, pre-consent entries: Agent Estes's entry of the garage and Officer Honore's sweep of the basement. If an illegal search occurred and voluntary consent followed, this court analyzes whether the circumstances of the illegal entry were sufficiently coercive to taint the consent. *See Robeles-Ortega*, 348 F.3d at 681; *see also United States v. Fields*, 371 F.3d 910, 915 (7th Cir. 2004). Establishing that the consent was not tainted is the government's burden. *Robeles-Ortega*, 348 F.3d at 683.

Agent Estes's entry of the garage—made without a warrant and without consent—was, in the words of the district court, "indisputably illegal." But Manuel's consent is nonetheless valid if the causal link between Agent Estes's entry and Manuel's consent is "so attenuated as to dissipate the taint." *Fields*, 371 F.3d at 915 (internal quotation marks omitted); *see also United States v. Valencia*, 913 F.2d 378, 382 (7th Cir. 1990). Here, there was no evidence that when Manuel consented, he was aware that the police had illegally entered the garage, or that they had already found cocaine. Because there was *no* "causal link" between the entry and the consent, Agent Estes's search did not taint the consent.

Punzo also argued that Officer Honore's sweep of the basement tainted Manuel's consent. Of course, the sweep was legal if it happened after Manuel consented to a search of the entire house, because Officer Honore's sweep would have been within the scope of the consent. But the record does not clearly establish the sequence of events, and so we will assume that the sweep preceded the consent. Punzo's argument fails nonetheless, because Officer Honore's sweep did not taint Manuel's consent. Punzo sees this case as governed by *United States v. Robeles-Ortega*, in which we held that consent obtained just minutes after five agents forcibly entered an apartment and conducted a security sweep with guns drawn while the occupants, including a four-year-old child, were forced to lay on the floor was tainted. 348 F.3d at 680. But the facts here are a far cry from that scenario. Although Officer Honore's sweep and Manuel's consent were separated by at most a few minutes, that is where the similarity between this case and *Robeles-Ortega* ends. It is difficult to imagine how Manuel, seated on a couch in the living room, could even have been aware that Officer Honore glanced into two rooms in the basement before joining Manuel and Officer Lau upstairs. But even if Manuel was aware of the sweep, Officer Honore's check of the basement—which took only a few minutes and turned up no contraband—was not sufficiently coercive to taint Manuel's consent to search.

We AFFIRM the judgment of the district court.