**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

v.

JENNIFER ANNE THOMS; TRACE RAE
THOMS,
            *Defendants-Appellees.*

No. 11-30120

D.C. No.
3:10-cr-00069-
JWS-JDR-1

OPINION

Appeal from the United States District Court
for the District of Alaska
John W. Sedwick, District Judge, Presiding

Argued and Submitted
May 10, 2012—Seattle, Washington

Filed June 29, 2012

Before: Ronald M. Gould, Jay S. Bybee, and Carlos T. Bea,
Circuit Judges.

Opinion by Judge Bea

## COUNSEL

Kirby Heller (argued), United States Department of Justice, Appellate Section, Criminal Division, Washington, D.C.; Jo

Ann Farrington and Stephan A. Collins, United States Department of Justice, Office of the United States Attorney, Anchorage, Alaska, for the plaintiff-appellant.

George J. Dozier, Jr. (argued) and Rex Lamont Butler, Rex Lamont Butler and Associates, Anchorage, Alaska, for defendant-appellee Trace Thoms.

Vikram N. Chaobal, Law Office of Vikram N. Chaobal, Anchorage, Alaska, for defendant-appellee Jennifer Thoms.

## OPINION

BEA, Circuit Judge:

In a criminal pre-trial matter, it is well established in our circuit and in most others that, if a district judge is inclined to depart from credibility findings of a magistrate judge that were favorable to the defendant, he may only do so after holding a de novo evidentiary hearing. *See United States v. Ridgway*, 300 F.3d 1153 (9th Cir. 2002). This right is grounded in the Due Process Clause. *Id.* at 1155-56.

But what about the reverse? What if a magistrate judge recommends *denying* a motion to suppress, but the district judge wishes to reverse that determination because he is inclined to disbelieve the testimony of government officials? In that case, must he hold a de novo hearing for the benefit of the *government*, which is the plaintiff in a criminal case?

This appeal considers such a case, and our circuit has yet to address this question. The government primarily urges us to adopt a broad rule: the government's right to a de novo hearing before a district judge is identical to that of defendants, even though the government cannot directly invoke the protections of the Due Process Clause. The defendants

counter that, without the Due Process Clause to ground this right, the decision to hold a de novo hearing in such cases is entirely within the district judge's discretion.

We disagree with both of those categorical options, and today we adopt a middle ground, though our rule counsels strongly in favor of holding a de novo hearing. We agree with the defendants that the government does not have an unqualified right to a de novo evidentiary hearing *whenever* a district judge reverses a magistrate judge's credibility determinations in a way adverse to the government. But we also agree with the government that its interest in the integrity and accuracy of judicial proceedings—which, after all, similarly underlie a defendant's due process rights to such a de novo hearing— will often counsel in favor of such a hearing. Thus, we hold that a district court abuses its discretion when it reverses a magistrate judge's credibility determinations, made after receiving live testimony and favorable to the government, without viewing key demeanor evidence, with one exception: where the district judge finds that the magistrate judge's credibility determinations had no legally sufficient evidentiary basis, so that, were they jury determinations, judgment as a matter of law would issue for the defendant.[1]

## I.

Although the government's appeal challenges only the procedure by which the district court rejected the credibility determinations of the magistrate judge, and not the merits of

---

[1]By using the term "judgment as a matter of law," we mean to incorporate the general standards of Federal Rule of Civil Procedure 50(a)(1), which states: "If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . resolve the issue against the party." We recognize that the analogy is not perfect, as juries do not decide the pre-trial motions which we address here, but the value of importing that standard to this context is that it is a standard with which district courts will be quite familiar.

the district court's decision to suppress the evidence, some understanding of the events leading to this dispute is necessary.

A.

On February 22, 2010, an Alaska state judge issued a warrant to search a residential house and outbuildings located in Wasilla, Alaska. The property is owned by defendants Trace and Jennifer Thoms. The warrant was issued on the basis of an affidavit submitted by Investigator Kyle Young, an Alaska state trooper, whose affidavit provided probable cause for the judge to conclude that the property's owners could be growing marijuana on the property.

The affidavit contained a variety of facts in support of the warrant, but, for purposes of this appeal, the key piece of information was Investigator Young's claim that overnight on February 21-22, 2010, he "smelled a strong odor of cultivating marijuana while driving on West Scarlett Circle, off of Scarlett Drive in Wasilla." He then said that "I immediately stopped my vehicle and checked the wind direction and noted that I was downwind of the first residence on the right on West Scarlett Circle, off of Scarlett Drive." Investigator Young parked his car and walked on the roadway a short distance, and he continued to smell marijuana. In the affidavit, he concluded that "Based upon the odor of marijuana in the proximity of the suspect residence and the wind direction at the time, I believe that the source of the odor was the first residence on the right on Scarlett Circle, described above." Investigator Young later estimated that he was approximately 400 to 600 feet away from the odor's source when he first smelled the marijuana.

The state court judge approved the warrant, and officers soon executed it and searched the property. There, in two outbuildings, police found a large marijuana grow operation, consisting of around 400 plants. Later, co-defendant Trace

Thoms testified to the many measures he took to contain the smell emanating from the building with the growing plants. This included insulating and taping the garage doors, installing two filtration systems, and even "ma[king] a conscious effort to grow marijuana that was less odorous." Thoms expressed confidence that these protections would shield his operation from law enforcement. "So were you able to sleep at night knowing you had these filtration systems?" asked the prosecutor. "I slept great," Thoms replied.

## B.

Nonetheless, on July 23, 2010, the Thomses were indicted on federal drug charges in the District of Alaska. The superseding indictment charged the Thomses with one count of conspiracy to manufacture marijuana; one count of manufacturing marijuana; one count of maintaining a place for the manufacture of marijuana; one count of conspiracy to commit money laundering; and fourteen counts of money laundering. The superseding indictment also contains allegations of criminal forfeiture against some of Thomses property and possessions.

The Thomses moved to suppress the evidence of the search, and they requested a *Franks* hearing to challenge the truth of the statements in Investigator Young's affidavit. Under *Franks v. Delaware*, 438 U.S. 154 (1978), and its progeny, a defendant can challenge the truth of police statements contained in an affidavit in support of a search warrant. Under *Franks*, suppression is appropriate only where a defendant proves that "that the magistrate or judge in issuing the warrant was misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *United States v. Stanert*, 762 F.2d 775, 780 (9th Cir. 1985). Thus, to prevail on this claim, the Thomses were required to show that Investigator Young's statements in the affidavit were deliberate or reckless false-

hoods. The matter was referred to a magistrate judge, who granted the request to hold a *Franks* hearing.

At the hearing, ten witnesses testified over the course of two days. Seven witnesses testified on behalf of the Thomses, including Trace Thoms and Professor Richard Doty, the director of the Smell and Taste Center at the University of Pennsylvania School of Medicine. Three witnesses testified on behalf of the government: Investigator Young, and two other officers involved in the search.

In a detailed report and recommendation, the magistrate "conclude[d] that the testimony at the *Franks* hearing does not show recklessness by Inv. Young nor does it prove the officer perjured himself when he claimed he smelled marijuana." The magistrate therefore recommended denying the motion to suppress.

The Thomses filed objections to the magistrate's report, and the district court reversed the magistrate's recommendation and granted the motion to suppress. The district court did so without holding a de novo evidentiary hearing to hear any live testimony. Instead, the district court conducted a de novo review of the facts and the law based on the entire record,[2] including the hearing transcript, and the district court concluded that a preponderance of the evidence at the *Franks* hearing showed that Investigator Young's claim that he smelled marijuana from his location was not credible. The court said:

> To conclude that Investigator Young did smell marijuana from the road, while in his vehicle would require the court to assume that Thoms' filtration

---

[2]As discussed further *infra*, 28 U.S.C. § 636(b) specifies that a district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."

system was either saturated or not functional; that the odor of marijuana left the outbuilding unfiltered and remained warm long enough to stay above the vegetation behind the Thomses' house;[3] that it either traveled around the Thomses' two-story residence or stayed warm long enough to traverse above it then suddenly dropped in the area Young claimed to smell marijuana; and that it followed the described 450 foot course without dispersing beyond perceptible levels. Those assumptions are contrary to a preponderance of the evidence presented at the *Franks* hearing.

Because a "district court *must* suppress evidence seized under a warrant when an affiant has knowingly or recklessly included false information in the affidavit," *United States v. Dozier*, 844 F.2d 701, 705 (9th Cir. 1988) (emphasis added), and the good faith exception did not apply, the district court granted the motion to suppress.

## C.

The government filed a motion to reconsider. The government requested reconsideration solely on procedural grounds. Namely, the government contended that the district court was required to conduct a de novo evidentiary hearing before rejecting the magistrate's credibility determinations.

The district court denied the government's motion. The district court acknowledged that when a district court reverses a magistrate judge's credibility findings in a manner adverse to a *defendant*, a de novo hearing is required on due process grounds. But "[b]ecause a defendant's due process rights are not at issue when a motion to suppress is granted over a magistrate judge's recommendation, a *de novo* evidentiary hearing

---

[3]The record shows that the outbuilding is set back from the street, and that between the street and the outbuilding there are many trees.

is not necessarily required." The district court noted that it had reviewed de novo the entire record and "explained at length how the evidence presented renders it highly improbable (indeed, it seems to this court in light of all the evidence, virtually impossible) that Investigator Young could smell the marijuana grow under the circumstances that existed at the time." Moreover, "[t]hat conclusion would not change simply because this court heard the evidence all over again."

The government timely appealed the district court's orders denying reconsideration and granting the motion to suppress.

## II.

We have jurisdiction to review this interlocutory appeal from a district court's grant of a motion to suppress under 18 U.S.C. § 3731. Whether the government has a legal right to a de novo hearing is a question of law, and we review questions of law de novo. *See Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1071 (9th Cir. 2012) (en banc).

## III.

The sole question presented is under what circumstances, if any, a district judge may reject a magistrate judge's credibility finding without holding a new hearing, when the magistrate recommends denying a motion to suppress and the district court refuses to adopt the recommendation and grants the motion to suppress. In resolving this question, we first address the government's argument that precedent requires a district court to hold a new hearing in *all* such circumstances. We disagree with this categorical proposition. However, we may also look to our supervisory authority and inquire whether a more limited rule suggesting a de novo hearing in many circumstances would be "desirable from the viewpoint of sound judicial practice although in nowise *commanded* by statute or by the Constitution." *Thomas v. Arn*, 474 U.S. 140, 146-47 (1985) (emphasis added) (internal quotation marks omitted).

We conclude that such a rule is desirable. Thus, we vacate the district court's suppression and reconsideration orders and remand to reconsider the issue with the new rule in mind.

### A.

**[1]** The relevant section of the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), allows a magistrate judge to conduct an evidentiary hearing on a motion to suppress and make recommendations to a district judge. Then,

> Within fourteen days after being served with a copy [of the magistrate's report], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

*Id.* The Supreme Court has said that it is "clear" from this text that "the statute calls for a *de novo* determination, not a *de novo* hearing." *United States v. Raddatz*, 447 U.S. 667, 674 (1980). Thus, it is undisputed the government has no right under the statute to require the district judge to hold a de novo hearing when he "accept[s], reject[s], or modif[ies]" the magistrate's recommendation.

**[2]** But despite the broad language of the statute, the district court's discretion either to hold or refuse to hold a new hearing when considering a magistrate's recommendation is not unbounded. Rather, this court has said that "a district court errs when it does not conduct a de novo evidentiary hearing if it rejects the credibility finding of a magistrate

judge who recommends the *granting* of a motion to suppress." *Ridgway*, 300 F.3d at 1157 (emphasis added). The critical question, then, is the source of law for the categorical rule for which the government advocates here. If the *Ridgway* rule is based solely upon a defendant's due process rights, then it is an asymmetrical right because, as the government admits, "the government does not share a defendant's right to due process."[4] But if that right inheres in all litigants' right to the "integrity and accuracy of the fact-finding process," *United States v. Bergera*, 512 F.2d 391, 393 (9th Cir. 1975), then the logic requiring a de novo hearing for defendants necessarily is symmetrical and requires a district court to conduct a de novo hearing *whenever* it rejects a magistrate's credibility findings.

A careful reading of our caselaw formally grounds this right in the Due Process Clause, and therefore the government does not have a *categorical* right to a de novo hearing *whenever* a district judge disagrees with a magistrate judge's credibility determinations and accompanying recommendation that a motion to suppress be denied. However, as we note below in subsection B, the interests recognized in these due process cases are shared by all litigants. Thus, a similar but more limited rule is appropriate for this case.

*United States v. Bergera*, the case on which the government most heavily relies, is the earliest in the key trio of cases in this area. In *Bergera*, the defendants were indicted for possession with intent to distribute marijuana after police found

---

[4]The Due Process Clause of the Fifth Amendment states that "[n]o person shall be . . . deprived of life, liberty, or property without due process of law." U.S. Const. amend. V; *see also id.* amend. XIV ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."). The Supreme Court has stated that "[t]he word 'person' in the context of the Due Process Clause of the Fifth Amendment cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union." *South Carolina v. Katzenbach*, 383 U.S. 301, 323 (1966).

drugs in the defendants' garage, bedroom, closets, kitchen, and Volkswagen bus. 512 F.2d at 392. The defendants moved to suppress the marijuana from admission into evidence, and the matter was referred to a magistrate for an evidentiary hearing. *Id.* After the hearing, the magistrate recommended granting the motion, but, without holding a new hearing, the district court reversed. *Id.*

We reversed. We explained our rationale not in terms of due process but in terms of the integrity and accuracy of the judicial process generally:

> Since the magistrate sees and hears the evidence, the district court is entitled to rely upon his recommendations when making its decision on the motion. If, however, the district court chooses to reject the recommendation of the magistrate, it must itself hear the testimony and see the evidence before deciding the motion. Permitting the district court to simply review dry records or listen to tape recordings of the evidentiary hearing conducted by the magistrate would not satisfy the high standard which must be set for factual determinations which by themselves can decide the outcome of a criminal trial. The defendant is entitled to the assurance that important factual conclusions will be drawn from the testimony and other evidence itself. That assurance is provided if the district court decides the motion in accordance with the recommendations of a judicial officer who observed the evidence. It is certainly provided if the district court sees and hears the evidence itself. But it is just as certainly absent if the district court is allowed to disregard the recommendation of the magistrate and decide the motion only on the basis of dry records and one dimensional tapes. Therefore we hold that the district court erred when it set aside the magistrate's recommendation and ruled on the

> motion to suppress without hearing the evidence on
> the motion itself.

*Id.* at 394. Were *Bergera* that last word on this topic, we
could conclude that the right to a full de novo hearing is
entirely symmetrical. *Bergera*'s concern with the "integrity
and accuracy of the fact-finding process" generally applies to
all who have a stake in the judicial process. *Id.* at 393. But
later decisions require us to recognize that its scope is limited.[5]

Five years after *Bergera*, the Supreme Court decided
*United States v. Raddatz*. In *Raddatz*, the defendant was
indicted for unlawfully receiving firearms, and he moved to
suppress incriminating statements he made to federal agents.
447 U.S. at 669-70. The matter was referred to a magistrate,
and both the defendant and the agents testified at a hearing.
*Id.* at 670-71. The magistrate recommended denying the
motion to suppress, and the district court accepted the recom-
mendation and denied the motion to suppress without holding
a de novo hearing. *Id.* at 672. The defendant raised two con-
tentions before the Supreme Court: first, that the Federal
Magistrates Act, newly amended in 1976, required a de novo
hearing, and, second, that the Due Process Clause requires a
de novo hearing.[6] *Id.* at 673, 677. The Court rejected both
claims. *Id.* at 676, 683-84. *Raddatz*'s interpretation of § 636,
the relevant portions of which have not been amended since
then, precludes the government from contending here that it

---

[5]Further, at the time of *Bergera*, the version of § 636 then in force was
broader, as it allowed district courts to promulgate rules whereby magis-
trates may be assigned duties "as are not inconsistent with the Constitution
and laws of the United States." 28 U.S.C. § 636(b) (1970). The statute said
that "[t]he additional duties authorized by rule may include, but are not
restricted to . . . assistance to a district judge in the conduct of pretrial or
discovery proceedings in civil or criminal actions." *Id.* The then-extant
statute made no mention of the procedure by which a district court is to
review a magistrate's handling of a pretrial matter.

[6]The defendant also raised a claim that § 636(b)(1) violated Article III,
but the Court rejected that claim and it is not at issue here.

is entitled to a de novo hearing on statutory grounds. We therefore discuss only *Raddatz*'s constitutional holding.

The Court began with the proposition that "[t]he guarantees of due process call for a hearing appropriate to the nature of the case." *Id.* at 677 (internal quotation marks omitted). The Court thus undertook a due process balancing inquiry before concluding that "the due process rights claimed here are adequately protected by § 636(b)(1)." *Id.* at 680. The Court then added an important footnote at the conclusion of the due process section. The footnote reads, in full:

> Neither the statute nor its legislative history reveals any specific consideration of the situation where a district judge after reviewing the record in the process of making a *de novo* "determination" has doubts concerning the credibility findings of the magistrate. The issue is not before us, but we assume it is unlikely that a district judge would reject a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal; to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions which we do not reach.

*Id.* at 681 n.7. Unfortunately, the Court did not specify the nature of these "serious questions," and it has not since *Raddatz* been presented with a case implicating them.

The final case in the trilogy is *United States v. Ridgway*. *Ridgway* had relevant facts similar to *Bergera*. The defendant was indicted on drug charges, and he filed a motion to suppress. 300 F.3d at 1154-55. The magistrate heard testimony, disbelieved the Drug Enforcement Administration ("DEA") agent, and recommended granting the motion. *Id.* at 1155. Without conducting a de novo hearing, the district court rejected the adverse credibility finding, because the district

court thought that inconsistencies in the DEA agent's testimony were in fact "explained fully" during the agent's cross-examination. *Id.* The defendant was convicted following a bench trial. *Id.* On appeal, this court vacated the order denying the motion to suppress and remanded because "a district court errs when it does not conduct a de novo evidentiary hearing if it rejects the credibility finding of a magistrate judge who recommends the granting of a motion to suppress." *Id.* at 1157.

**[3]** *Ridgway*'s reasoning is grounded in concepts of due process. The *Ridgway* court began by noting that "[w]e review de novo the question whether a defendant's due process rights were violated." *Id.* at 1155. *Ridgway* then explicitly gives *Bergera* a narrow reframing in light of *Raddatz.* The *Ridgway* court said:

> Although we held in *Bergera* that a district court is required to conduct a de novo evidentiary hearing before rejecting the factual determinations of a magistrate judge on a motion to suppress, we did not frame this issue in terms of a due process violation. In a case decided after we issued *Bergera*, however, the Supreme Court [in *Raddatz*] addressed a related issue and did frame its holding in terms of a defendant's right to due process.

*Id.* at 1156.

*Ridgway*'s holding is expressly limited to cases where a *defendant's* due process rights would be violated by the failure to hold a de novo evidentiary hearing. Moreover, *Ridgway* says that *Bergera* must be read in light of the Supreme Court's *Raddatz* reframing of this issue in terms of due process. Thus, the precedent we are required to follow is limited to the proposition that a *defendant* has a right to a de novo hearing when the district court rejects the magistrate's credibility findings that were favorable to the defendant. If the

right to an evidentiary hearing prior to rejection of the magistrate's credibility findings is based solely on the Due Process Clause, the principle is not symmetrical: the government has no right to a de novo evidentiary hearing in *all* circumstances where a magistrate's credibility determination is reversed, for the government concedes it has no due process rights. *See supra* p. 7704 and note 4. Further, in 2007, this court reaffirmed the narrower, asymmetrical view of *Ridgway* and *Bergera* when it said that "we reaffirmed in *Ridgway* that a district court errs when it does not conduct a de novo evidentiary hearing if it rejects the credibility finding of a magistrate judge who recommends *granting* a motion to suppress." *United States v. Hernandez-Acuna*, 498 F.3d 942, 944 (9th Cir. 2007) (emphasis added) (citation omitted).

More recently, in *Johnson v. Finn*, 665 F.3d 1063 (9th Cir. 2011), our court encountered a case where the district court, without holding a de novo hearing, reversed a magistrate's determination that a prosecutor had purposefully discriminated on the basis of race in exercising a peremptory strike of a juror. *Id.* at 1065-66. We reversed. In so doing, we extended the *Ridgway* rule to the *Batson* context, so that a defendant's due process rights are violated when a district court "declin[es] the opportunity to observe the trial prosecutor's demeanor before rejecting the magistrate judge's adverse credibility finding." *Id.* at 1066. The court in *Johnson* noted the importance of the general interest in accurate factfinding, stating that a district judge who rejects a credibility determination without holding a de novo hearing is "hampered by the deficiencies of a cold record." *Id.* at 1073. The court then reaffirmed *Ridgway*'s understanding of *Raddatz* by saying that "the *Raddatz* footnote applies generally to *determinations affecting the rights of a criminal defendant* and involving a credibility finding." *Id.* at 1074 (emphasis added).

**[4]** From these repeated invocations of the Due Process Clause, we can discern that the *absolute* right to have a de novo hearing in *all* circumstances where a district court

reverses a magistrate's credibility findings belongs only to defendants or others who may assert due process rights. Thus, we decline to adopt the government's proposed broad rule and extend that line of precedent to all such determinations adverse to the government.

### B.

**[5]** But that does not end the matter. Our court has supervisory authority "to mandate procedures deemed desirable from the viewpoint of sound judicial practice although in nowise commanded by statute or by the Constitution." *Thomas*, 474 U.S. at 146-47 (internal quotation marks omitted). The longstanding and repeated invocations in caselaw of the need of district courts to hear live testimony so as to further the accuracy and integrity of the factfinding process are not mere platitudes. Rather, live testimony is the bedrock of the search for truth in our judicial system. After all, "[w]here an unresolved factual dispute exists, demeanor evidence is a significant factor in adjudging credibility." *Townsend v. Sain*, 372 U.S. 293, 322 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1, 5-6 (1992); *see also Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) ("[O]nly the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.").

**[6]** To further the integrity and accuracy of our judicial process and to facilitate the search for truth, we therefore adopt a narrower rule than the one that applies where due process protections formally attach. We hold that a district court abuses its discretion when it reverses a magistrate judge's credibility determinations, made after receiving live testimony and favorable to the government, without viewing key demeanor evidence, with one exception: where the district judge finds that the magistrate judge's credibility determinations had no legally sufficient evidentiary basis, so that, were they jury determinations, judgment as a matter of law would issue

for the defendant. So that district courts may apply this rule practically, we turn to the rule's application in the context of this case. As applied here, we vacate and remand the district court's orders for reconsideration.

**[7]** The district court noted that "in many cases, a district court might need to conduct a second evidentiary hearing" before departing from a magistrate judge's credibility findings. But the district court failed to hold one for the following reasons:

> [T]his court has had access to a transcript of the original evidentiary hearing and has explained at length [in the previously quoted order] how the evidence presented renders it highly improbable (indeed, it seems to this court in light of all the evidence, virtually impossible) that Investigator Young could smell the marijuana grow under the circumstances that existed at the time. That conclusion would not change simply because this court heard the evidence all over again. The issue here does not turn on the demeanor of the witnesses, but rather on the implausibility of the officer's conclusion that he smelled the marijuana grow inside a sealed building at least 450 feet away, which was screened by forest vegetation and a hill with a house on it. These considerations, which are paramount in rendering Young's conclusion unbelievable, are either derived directly from or are entirely consistent with Investigator Young's own testimony. It would serve no purpose but delay to conduct a second hearing to hear the testimony all over again.

D. Ct. Order on Reconsideration 5 (emphasis removed) (footnote omitted). These considerations are not enough to overcome the strong presumption in favor of achieving integrity and accuracy through hearing some live testimony anew which we today adopt. The standard we import from Federal

Rule of Civil Procedure 50 for judgment as a matter of law in favor of Thoms was not met here. The evidence and testimony in favor of the Thomses was not so overwhelming that the district court could have found, as a matter of law, that no reasonable factfinder could have credited Investigator Young's testimony.

**[8]** In addition, the district court's reasoning is speculative. The district court stated that its "conclusion would not change simply because this court heard the evidence all over again." But the district judge merely said that Young's account was "implausible" based on the cold record. Perhaps seeing Investigator Young's demeanor as he testified to what he smelled *would* have changed the outcome. The strong presumption in our system is that demeanor evidence has important value. If so, then the district judge's certitude is misplaced. Surely, there was some possibility the outcome would have been different had he heard live testimony. As one example, Investigator Young could have been testifying truthfully without undermining any of the considerations important to the district court's prior conclusion if the odor filtration system was not working properly on the night Young said he smelled marijuana. That it was working properly depended in part on the evidence of the defendants, whose demeanor was not observed by the district court. Or there might be other circumstances bolstering Young's credibility that were not ruled out.

Moreover, the district court's reasoning discounts the government's interest in the "accuracy and integrity" of the factfinding process which, after all, is the foundation of the due process right given defendants. Given the stated importance of demeanor evidence in our system, the strong presumption is that the government is entitled to proffer it for its most important witnesses before a district judge reverses a magistrate's credibility finding in favor of the government. Moreover, other stakeholders—like Investigator Young and other similar law enforcement officials—also share this interest in the integrity of the proceedings. In this case, just as in most

cases where a district court grants a motion to suppress when it rejects a magistrate's credibility determination, the real-world consequence of the district court's decision is that the police officer was lying or recklessly disregarding the truth in his warrant affidavit. There is a strong possibility that such a finding could have serious professional, or even legal, consequences for Young. Yet the district judge discounted Investigator Young's interest in presenting his demeanor to the district court. Put another way, before a district court calls a police officer a liar, there is a strong presumption that the judge should look him in the eye first.

We recognize that not everyone agrees that demeanor evidence and live testimony are as important to the integrity and accuracy of the judicial process as we think it is. The district court stated on the record that live testimony would be useless in this case. Others have gone further and argued that the biases created by hearing live testimony can actually detract from factfinding accuracy, and that these biases may be especially acute in the context of suppression motions. They note that police officers testify frequently, are professionally trained to remain calm in difficult circumstances, and come with a professional reputation of trustworthiness. Defendants have none of those advantages, and the "very thing the defendant seeks to suppress—evidence of criminal behavior—suggests that he is less than an honest, upright citizen." William J. Stuntz, *Warrants and Fourth Amendment Remedies*, 77 Va. L. Rev. 881, 914 (1991). Some think it likely that this "credibility gap" can be lessened where a judge looks at a cold record, since a cold record may permit the judge to focus more on the substance of the testimony and less on witness demeanor and appearance, which, at least in some circumstances, could be as misleading as they are helpful. "Perhaps," states a leading federal procedure treatise, "the entire American reliance on demeanor is misplaced." *Cf.* 12 Charles Alan Wright et al., *Federal Practice & Procedure Civil* § 3070.2 (2d ed.); *see also id.* at n.20 ("There is a considerable body of psychological research indicating that in many contexts

observing people tell stories does not enhance the ability to determine whether the story is truthful, and may even corrupt the ability to make accurate decisions about truthfulness.").

We disagree, and do not think we overvalue the importance of live testimony. For one thing, the Supreme Court and our court have repeatedly cited the value of live testimony with respect. Perhaps more importantly, trial judges and juries in our circuit and all over the country rely on the demeanor evidence given by live testimony everyday, and they find it quite valuable in making accurate decisions. Such testimony is in fact indispensable, and the value of live, in-court testimony is enshrined in the Sixth Amendment's Confrontation Clause. The value of live testimony is a large part of why our court reviews district courts' factual findings for clear error. Further, the value of live testimony also contributes to the need for trial and disregard of summary judgment when there is a genuine factual dispute on a relevant issue. Here, for instance, we are in the same position as the district court with respect to assessing the credibility of the witnesses who testified before the magistrate. But only the district court has the option of adding to that record through live testimony. That is a great advantage, which district courts should take in most cases before reversing credibility determinations.

We do wish to highlight two limitations on the scope of our rule. First, as we have stated, the rule we adopt today is not completely equivalent to the absolute right to de novo hearings possessed by defendants. If the magistrate's determination was so lacking in support that judgment as a matter of law for the party who lost before the magistrate is appropriate, a de novo hearing may not be in order. Having limited exceptions to the de novo hearing requirement where the government's interests are at stake puts us in line with the other circuits to have considered this issue. Both the Second and Eleventh Circuits have stated de novo hearings are required in most, but not all, circumstances where a magistrate judge's credibility findings are reversed to the detriment of the gov-

ernment. *See United States v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001) (per curiam); *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008). The Thomses candidly admit that those cases are on point, but they urge us to depart from the rule in our sister circuits. We decline the invitation to create a circuit split.

Second, the de novo hearing before the district judge need not be a rerun of the *entire* hearing that occurred before the magistrate. Here, ten witnesses testified before the magistrate over the course of two days, including an expert witness who is a professor at the University of Pennsylvania, in Philadelphia. Where the inefficiencies of hearing live testimony from a witness greatly outweigh the value of seeing demeanor evidence, a district court can hold a more limited hearing than that conducted by the magistrate. But here, as in many cases, the key witnesses, Investigator Young and the defendants likely live or work relatively near the courthouse. Further, conducting a more limited hearing relieves the district court of the heavy burden of entirely redoing the original hearing. We leave it to the district court on remand to determine whose live testimony it should hear to balance efficiency with the integrity and accuracy interests we have described.

* * *

**[9]** In the business of judging, there is nothing more important than getting the facts right. In many cases, factual determinations are made after hearing live testimony regarding two competing versions of critical events. To further the accuracy and integrity of these determinations, we hold that a district court abuses its discretion when it reverses a magistrate judge's credibility determinations, made after receiving live testimony and favorable to the government, without viewing key demeanor evidence, with one exception: where the district judge finds that the magistrate judge's credibility determinations had no legally sufficient evidentiary basis, so that, were they jury determinations, judgment as a matter of law

would issue for the defendant. As applied to this case, we VACATE the orders on suppression and reconsideration and REMAND for further consideration. That consideration on remand, we presume, will include a de novo hearing before the district judge, but we leave it to the district court to determine the scope of that hearing.

**VACATED and REMANDED.**