BEA, Circuit Judge,
with whom KOZINSKI, CALLAHAN, and IKUTA, Circuit Judges, join, dissenting from the denial of rehearing en banc:
I join Judge Bybee’s excellent dissent from the denial of rehearing en banc. I write separately to emphasize a serious error in the panel’s conclusion that the due process claims advanced by Washington and Minnesota (collectively, “the States”) were likely to succeed on the merits. States may not sue the federal government to assert due process rights for themselves, nor for their residents—much less non-resident aliens—under the Fifth Amendment, because the States are not proper party plaintiffs.[1] We should have taken this case en banc to correct this error in the panel’s due process holding and the several errors identified by Judge Bybee in his dissent.
The States are not proper party plaintiffs to make claims under the Due Process Clause, because they are simply not “persons” protected by the Fifth Amendment.[2] See South Carolina v. Katzenbach, 383 U.S. 301, 323-24, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966) (“The word ‘person’ in the context of the Due Process Clause of the Fifth Amendment cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union, and to our knowledge this has never been done by any court.”);[3] United States v. Thoms, *1186 684 F.3d 893, 899 n.4 (9th Cir. 2012) (quoting Katzenbach, 383 U.S. at 323, 86 S.Ct. 803); Premo v. Martin, 119 F.3d 764, 771 (9th Cir. 1997) (“Because the State is not a ‘person’ for the purposes of the Fifth Amendment, the State’s reliance on the Due Process Clause was misplaced.” (citing Katzenbach, 383 U.S. at 323-24, 86 S.Ct. 803)).
Perhaps to avoid this pitfall, the panel goes one step further. It holds that, “[u]n-der the ‘third party standing’ doctrine, [the] injuries to the state universities give the States standing to assert the rights of the students, scholars, and faculty affected by the Executive Order.” Washington, 847 F.3d at 1160. In taking this step, the panel ignores direct, on-point Supreme Court precedent to the contrary.
The States may not sue the federal government as parens patriae to protect their citizens from constitutional violations alleged to have been committed by the federal government. See Katzenbach, 383 U.S. at 324, 86 S.Ct. 803 (“Nor does a State have standing as the parent of its citizens to invoke these constitutional provisions against the Federal Government, the ultimate parens patriae of every American citizen.”); Massachusetts v. Mellon, 262 U.S. 447, 485-86, 43 S.Ct. 597, 67 L.Ed. 1078 (1923) (“While the state, under some circumstances, may sue in that capacity for the protection of its citizens, it is no part of its duty or power to enforce their rights in respect of their relations with the federal government. In that field it is the United States, and not the state, which represents them as parens patriae, when such representation becomes appropriate; and to the former, and not to the latter, they must look for such protective measures as flow from that status.” (citing Missouri v. Illinois, 180 U.S. 208, 241, 21 S.Ct. 331, 45 L.Ed. 497 (1901))); see also Erwin Chemerinsky, Federal Jurisdiction 123 (7th ed. 2016) (“One important limit on parens pat-riae standing of state and local governments is that they may not sue the federal government in this capacity, though they may sue the federal government to protect their own sovereign or proprietary interests.”).
The panel avoids this precedent, and holds that the States may sue the federal government on behalf of their residents’ (and potential future residents’)[4] constitu *1187 tional interests under the Fifth Amendment because the States have third-party standing to do so.[5] None of the precedent cited by the panel supports its assertion— which, by the way, was never advanced by the States in their complaint, their response to the federal government’s emergency motion, or during oral argument— that a state can evade the strictures of Katzenbach and Mellon through third-party standing doctrine. A closer look at third-party standing doctrine reveals just the opposite. See Kowalski v. Tesmer, 543 U.S. 125, 129-30, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004) (“[T]here may be circumstances where it is necessary to grant *1188 a third party standing to assert the rights of another. But we have limited this exception by requiring a party seeking third-party standing make two additional showings. First, we have asked whether the party asserting the right has a ‘close’ relationship with the person who possesses the right. Second, we have considered whether there is a ‘hindrance’ to the possessor’s ability to protect his own interests.” (quoting Powers v. Ohio, 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991))). Even if we assume a close relationship between the States’ universities and their students, faculty, and scholars, the panel—and more importantly, the States—have not identified any hindrance to first parties’ “ability to protect [their] own interests” here. Id.; see also Louhghalam v. Trump, 230 F.Supp.3d 26, 2017 WL 479779 (D. Mass. Feb. 3, 2017) (reviewing constitutional claims arising from Executive Order 13769 brought by Iranian nationals who are employed as Associate Professors at the University of Massachusetts-Dartmouth). The panel’s conclusion that the States may assert the due process rights of their residents (or potential future residents) under third-party standing doctrine renders Katzenbach and Mellon meaningless.
To the lay person, our discussion of third-party standing doctrine may seem pedantic and without recognition of the harm that could have resulted from the grant of the federal government’s motion to stay the temporary restraining order pending appeal. The important point is this: The States may not sue the federal government, either on their own behalf or on behalf of their citizens, to protect their residents’ due process rights under the Fifth Amendment. Much less do the States have third-party standing as to non-resident aliens seeking entry into the country. Therefore, the panel erred when it concluded that the federal government did not establish a likelihood of success on the merits of the States’ due process claims— the only claims fully addressed by the panel.
As the district court stated, but unfortunately failed adequately to apply in his temporary restraining order, “The work of the court is not to create policy or judge the wisdom of any particular policy promoted by the other two branches. That is the work of the legislative and executive branches and of the citizens of this country who ultimately exercise democratic control over those branches. The work of the Judiciary, and this court, is limited to ensuring that the actions taken by the other two branches comport with our country’s laws, and more importantly, our Constitution.” Washington v. Trump, No. C17-0141-JLR, 2017 WL 462040, at *3 (W.D. Wash. Feb. 3, 2017). At a minimum, the federal government established a likelihood of success on the merits that Executive Order 13769 comports with our country’s laws and our Constitution. The government’s motion for a stay of the temporary restraining order should have been granted. Our court should have avoided the inclination to rule based on the political headwinds of a particular moment in history and taken this case en banc to correct the panel’s significant errors.

. The panel denied the government’s motion for a stay solely on due process grounds. Washington v. Trump, 847 F.3d 1151, 1164 (9th Cir. 2017). It specifically avoided deciding the First Amendment claim based on religious discrimination.

. I agree with the panel that the States have alleged proprietary harms to their public universities sufficient to establish Article III standing. The universities have spent money for procurement of visas for scholars, faculty, and students, which expenditures will be wasted if the visa holders are prevented from attendance at the state schools. What the States have not done, however, is establish that they have rights under the Due Process Clause of the Fifth Amendment to vindicate those proprietary harms.

.In Katzenbach, South Carolina sought "a declaration that selected provisions of the Voting Rights Act of 1965 violate the Federal Constitution,” and "an injunction against enforcement of [those] provisions by the Attorney General.” Katzenbach, 383 U.S. at 307, 86 S.Ct. 803. South Carolina filed its case directly in the Supreme Court, which had original *1186 jurisdiction to hear the case. Id. The Court denied South Carolina's request to enjoin the enforcement of the Voting Rights Act. In its response to South Carolina's claim that the Voting Rights Act denied South Carolina due process, the Court held that states may not bring due process claims under the Fifth Amendment because states are not persons protected by the Fifth Amendment. Id. at 323-24, 86 S.Ct. 803.

. The panel holds that the States may assert “potential claims regarding possible due process rights of other persons,” including "[visa] applicants who have a relationship with a U.S. resident or an institution that might have rights of its own to assert.” Washington, 847 F.3d at 1166. The Supreme Court has already explained that the States have no rights of their own to assert under the Fifth Amendment, and have no basis for asserting the Fifth Amendment due process rights of their residents. In light of that precedent, I see no reason why the States would be permitted to assert due process claims on behalf of foreign individuals who have not yet received a visa, and who do not yet reside in the States that wish to assert claims on the individuals' behalves. The panel also does not explain what procedures as to notice (reason for denial) or due process hearing (proof of reasons) the federal government would need to provide non-resident visa applicants to satisfy due process upon the denial or suspension of entry pursuant to 8 U.S.C. § 1182(f). Suppose, for example, an Iranian national applies for a non-immigrant tourist visa on April 1, and hostilities break out between the United States and Iran on April 10, one day before the Iranian national expected to receive a visa. Is the Iranian national entitled to notice that his visa will not be issued because *1187 of the outbreak of hostilities and to a hearing to justify that the government's denial does not violate the Iranian national’s due process rights? Before whom would that hearing be held, where would it take place, and what would be the required proof? Could the Iranian national file suit in a federal district court to assert his "possible” due process rights? The panel invites litigation by visa applicants and other non-resident foreign nationals to assert "potential claims regarding possible due process rights.” Id. But, as Judge Bybee shows with precision, no alien has a right to enter the United States; it is a privilege which can be withheld. See London v. Plasencia, 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.”).

. The States did not raise third-party standing as a basis to assert the due process rights of their residents. Instead, the States argued that, as parens patriae, they may bring due process claims on behalf of their residents (and potential future residents), citing Mellon, 262 U.S. at 481-82, 485, 43 S.Ct. 597 (1923), Alfred L. Snapp & Son, Inc. v. Puerto Rico, 458 U.S. 592, 609, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982), and Massachusetts v. EPA, 549 U.S. 497, 516-21, 520 n.17, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007). Not so. Although Mellon cites Missouri v. Holland, 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641 (1920), for the proposition that a state may sue the federal government to protect its own quasi-sovereign interests, such as the right of a state to regulate the taking of wild game within its borders, Mellon, 262 U.S. at 482, 43 S.Ct. 597, Mellon also made clear that "it is no part of [a state's] duty or power to enforce [its citizens'] rights in respect of their relations with the federal government.” Id. at 485-86, 43 S.Ct. 597. In Snapp, Puerto Rico sued private individuals and companies engaged in the apple industry in Virginia, alleging that those individuals and companies violated federal statutes when they allegedly discriminated against qualified Puerto Rican farmworkers. The Fourth Circuit held that Puerto Rico, as parens patriae, could maintain its suit against the private defendants. The Supreme Court affirmed, and held that Puerto Rico could sue "to secure the federally created interests of its residents against private defendants," but also noted that states lack "standing as parens patriae to bring an action against the Federal Government.” Snapp, 458 U.S. 592, 610 n.16, 102 S.Ct. 3260, 73 L.Ed.2d 995 (emphasis added). Finally, in Massachusetts v. EPA, the Supreme Court held that Massachusetts alleged facts sufficient to establish standing— not to assert constitutional rights on behalf of its residents, but to assert a statutory right on behalf of the. state's own quasi-sovereign interests—to sue the Environmental Protection Agency (EPA). Massachusetts, 549 U.S. at 517-21, 127 S.Ct. 1438. The Court held that the state was entitled to "special solicitude” in the standing analysis because Congress accorded the states a procedural right to challenge agency action unlawfully withheld, and because the state owned much of the territory alleged to be affected by the EPA's withholding of agency action. Id. at 520, 127 S.Ct. 1438. Here, neither the States nor the panel cite any congressional authorization for the States to bring their claims. None of the cases cited by the States or the panel supports a theory that a state, as parens patriae, may sue the federal government to assert the due process rights of its residents. The panel’s uninvited leap to third-party standing completely avoids the precedents actually cited by the States, which more directly address the question whether states can sue the federal government to assert constitutional claims on behalf of their residents. The answer to that question is “No."